## McCLURE, administrator, *v.* SMITH *et al.*

Where A. borrowed a sum of money from B. and, to secure the payment thereof, executed and delivered to B. a warranty deed to certain land, the instrument not disclosing that it was a security deed, but purporting to convey absolute title, the borrower at the same time taking from the lender a bond to reconvey upon payment of the debt, and subsequently the maker of the deed borrowed another sum of money from the grantee, and executed, upon the bond for title, a written agreement that the grantee should not be required to reconvey the property until this last-mentioned debt was fully paid, the effect of the second contract was to extend the security afforded by the deed to the new loan; and the transaction was not only good between the parties, but the lender was entitled to priority over the lien of a judgment obtained by a third party on an unsecured debt created after the deed was recorded. This is true notwithstanding the fact that the written agreement upon the bond for title, extending the security afforded by the deed to the second loan made by the grantee to the grantor, was never recorded.

Submitted May 1, — Decided June 10, 1902.

Money rule. Before Judges Estes. Dawson superior court. August, 1901.

*W. A. Charters,* for plaintiff, cited 98 *Ga.* 213; 111/729; 88/191; 102/363; 96/340; 107/386; 62/623; 100/438.

*H. H. Perry* and *W. B. Sloan,* for defendant, cited 72 *Ga.* 396; 100/442, 393; 103/610; 60/593; 80/16; 71/371; 98/213; 96/727; 99/419; 13/88; 19/73; 29/142; 114/321; 101/307; 67/505; 73/644; 47/215; 75/62; 92/796; 62/623; 69/614; 63/296; 111/667; 99/595; 76/687; 84/245; 101/258; 40/538; Civil Code, §§ 3077, 5433; 7 Cranch, 35; 3 Pom. Eq. 1197–8; 20 Am. & Eng. Enc. L. 964; 113 U. S. 326; 73 Ill. 82.

FISH, J. This case was, by agreement of the parties thereto, submitted to the presiding judge for determination, without the intervention of a jury, upon an agreed statement of facts. The case as made by the pleadings and this agreed statement of facts was as follows: On February 2, 1888, John D. Palmour borrowed $2,000 from Marshall L. Smith, giving his note for this amount with interest, and to secure the payment of the same made to Smith a warranty deed to certain described lands, the deed reciting a consideration of $2,000, but not indicating that it was given to secure the payment of a debt. At the same time Smith gave to Palmour a bond to reconvey the property to him upon the payment of the debt. The deed was recorded on January 5, 1889. On February 7, 1888, Palmour borrowed $100 more from Smith, for which he gave him his note, and to secure the payment of the same executed upon the bond for title a written agreement in which he stipulated that Smith should not be required to reconvey the lands until this debt also was paid. On November 1, 1888, Smith made him another loan of $200, for which Palmour gave him another note, to secure the payment of which he executed on the bond for title a written agreement similar to the one just above mentioned. Neither of these two written agreements was ever recorded, and Palmour never paid any portion of either of the three loans. Smith brought a suit against Palmour on the first note, and on February 13, 1900, obtained a judgment, which was made a special lien on the lands described in the deed. He also brought a suit upon the two smaller notes, setting up the above-mentioned facts in reference to the two loans for which they were given, and claiming, by reason thereof, a special lien on the lands for the amounts due on these notes. On the same day that the judgment just mentioned was rendered, Smith obtained a judgment against Palmour for the amount due upon the two notes last given, which was made a special judgment for this amount against the lands described in the deed. Subsequently Smith made a deed reconveying the lands to Palmour, and filed the same in the office of the clerk of the superior court, an entry having been made on the deed, at the time of the filing, which recited that it was executed and filed in the clerk's office in order that a levy might be made upon the lands therein described, to satisfy the two executions issued from the above-mentioned judgments. After the deed was recorded, he had

the executions which had been issued upon his two judgments levied on the lands, and, under these executions, the lands were sold by the sheriff.   In 1898 McClure, as administrator upon the estate of Elizabeth Black, obtained a judgment for $1,354.56 against Palmour; and when the sheriff was proceeding to sell the lands under the executions in favor of Smith, McClure served him with a written notice to hold up a sufficiency of the proceeds of the sale to pay the judgment which he, as administrator, held against Palmour, and at the same time placed his execution in the hands of the sheriff.   The sheriff having sold the lands and not having paid to McClure, as administrator, the amount of his execution, he, after the sheriff had gone out of office, brought a rule against him to show cause why he should not be required to do so.   Smith, by intervention, became a party to this proceeding.   From the answer of the ex-sheriff it appeared that he had paid both of the Smith executions in full, and the costs involved, and had left in his hands an amount which was insufficient to pay the McClure execution. Upon the trial of the case, McClure admitted that the amount due on the judgment rendered in favor of Smith in the suit upon the $2,000 note was properly paid by the sheriff; but he contended that the amount due upon Smith's other judgment was illegally paid by the sheriff, as the lien of such judgment was inferior to that of his judgment, which was of older date. The issue between the parties was, whether the unrecorded written agreements which Palmour had executed upon the bond for titles, for the purpose of securing the payment of the two smaller loans which he had obtained from Smith, taken in connection with the deed which he had previously made to Smith, created liens upon the lands which were superior to the lien of the McClure judgment.   The judge held that they did, and accordingly rendered a judgment ratifying and approving the payment by the sheriff of the amounts due upon both of Smith's judgments.   McClure, as administrator, excepted to the judgment of the court, alleging that the court erred in holding that Smith's smaller judgment had any special lien upon the lands as against the McClure judgment.

Each of the written agreements executed by Palmour upon the bond for titles which he held from Smith clearly indicated the purpose to create a lien and the debt to secure which it was given, and described the lands upon which it was to take effect as the lands

mentioned in the bond for title, which were, of course, those described in the deed. Undoubtedly, therefore, the legal effect of these written agreements was to extend the security afforded by the deed to the loans made by the grantee to the grantor subsequently to the one which the deed was originally given to secure. The parties had the right to contract that the security created by the deed for the protection of the first loan should be extended to cover the subsequent loans. Smith held the legal title to the land to secure the payment of the first loan, and Palmour could bind himself, by written agreement, to allow Smith to continue to hold this title until the additional loans were paid. This much is settled by the decision in *Wylly* v. *Screven*, 98 *Ga.* 213, where it was held: "Where a deed was executed to secure a specified debt, the security thus created could, by written contract between the parties, be so extended as to secure, as between them, another debt subsequently contracted by the grantor in favor of the grantee; and in such case it was not essential that this latter contract should in terms specifically describe the property covered by the original deed, this being sufficiently accomplished by references in the contract to the deed itself, and the description in the latter being full and accurate." It is contended, however, that, as these written agreements were not recorded, the effort to extend the security afforded by the deed to the loans made by the grantee to the grantor subsequently to the loan which the deed was given to secure failed of its purpose, so far at least as the rights of a judgment creditor of the grantor, who obtained his judgment after the record of the deed, are concerned. That is, the contention is, that as to the debts of Palmour to Smith, mentioned in these agreements written on the bond for title, the record of the deed afforded no protection against the McClure judgment. A simple and sufficient reply to this contention is, that there is nothing in the law which required the agreements extending the security afforded by the deed to these new loans to be recorded. In order that a security deed may be superior to a subsequently obtained judgment against the grantor, the law only requires the deed itself to be recorded within thirty days of its execution, or before such judgment is rendered. It does not require that the deed, or anything connected with the record thereof, shall show the amount of the indebtedness that it is given to secure. If the law required the record to show the amount of the indebtedness secured by the

deed, the contention of the plaintiff in error would be sound. Indeed, if such were the requirement of the law, the deed itself in the present case would have been postponed to the McClure judgment, for the deed did not even indicate that it was given as security for any debt whatever, but appeared to be an absolute warranty deed, and therefore its record did not show what indebtedness it was given to secure, or even that it was a security deed. As the statute does not require the deed itself, or anything connected with its record, to show how much indebtedness it secures, or even that it secures any debt at all, there was no necessity for the record of the written agreements extending the security created by the deed to loans subsequently made by the grantee to the grantor. There was no more necessity for the grantee to have recorded these agreements, showing the existence and the amount of the new loans which the deed secured, than there was for him to have recorded the bond for title which he had given to the grantor, which showed the existence and amount of the debt which the deed was originally given to secure. When the deed was recorded, the title which it conveyed to the grantee became superior to a general judgment subsequently obtained against the grantor; and the title being superior to such a judgment, whatever that title, as between the grantor and grantee, protected and secured was protected and secured against such a judgment. The record put the world upon notice that the title to the lands conveyed by the deed was no longer in Palmour, but had been conveyed to Smith; and as the deed appeared to be an absolute warranty deed, it is difficult to conceive how anybody subsequently dealing with Palmour could have been misled or injured by Smith's failure to put on record written instruments which showed that the deed was given to secure a debt, and that the security which it afforded had been extended to protect two designated debts in addition to the one which it originally covered. Prior to the passage of the act of September 30, 1885 (Acts 1884–5, p. 124), now codified (Civil Code, § 2772), a security deed executed in good faith, though unrecorded, was superior to a subsequently-acquired lien against the grantor. *Phinizy* v. *Clark*, 62 *Ga.* 623; *Sosnowski* v. *Rape*, 69 *Ga.* 548. So it is only by reason of the provisions of that statute that such a deed, if not recorded, is postponed to a general judgment subsequently obtained against the grantor. As this statute only requires the deed itself to be recorded, it can

not be extended, by construction, so as to require the record of any other instrument connected with or growing out of the contract between the grantor and the grantee.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*