### HURST *v.* FLYNN-HARRIS-BULLARD COMPANY.

Where a creditor holds a deed conveying certain property to secure a named sum, and providing "also, it being expressly agreed that this deed to secure debt secures any other advances made by the party of the second part to the party of the first part, and any other indebtedness owing, or to be owing at any time between this date and the date of the cancellation of this security deed, whether the same be covered by note or

by an open account, or otherwise, irrespective of the amount, as first limited above," and, "it being expressly agreed that when any payment is made on said notes, or any renewal thereof, fresh advances may be made, from time to time, at the option of the party of the second part, so as to make this contract continuous in its nature," and future advances are made under the deed, the creditor is protected by his security for such future advances made without notice that a third person had taken from the debtor a warranty deed to the property and without notice that such third person was in possession of the property, or claimed an interest in it.

No. 6346. MAY 19, 1928.

Equitable petition. Before Judge Yeomans. Seminole superior court. October 19, 1927.

G. W. Hagan resided at Donalsonville, Seminole County, Georgia, and was engaged in the business of manufacturing naval-stores products. Flynn-Harris-Bullard Company was a corporation with its principal place of business at Jacksonville, Florida. It was engaged in the business of financing producers of naval stores in their operations, and was the factor of Hagan, who was indebted to that company approximately $17,000, and desired an additional advance of approximately $3000, as well as an arrangement whereby that company would continue in the future to make advances in money for use in the operation of his naval-stores business. Accordingly, on October 16, 1917, Hagan executed and delivered to Flynn-Harris-Bullard Company a deed to secure debt, conveying, with other property, lot of land 20 in the 14th district of Seminole County, Georgia. This deed, by its express terms, was given to secure an existing indebtedness of $16,918.87, together with $3081.13 which the company agreed to thereafter advance to Hagan, the two amounts aggregating $20,000, which was evidenced by four promissory notes for $5000 each. The deed contains the following provision: "It being expressly agreed that when any payment is made on said notes, or any renewal thereof, fresh advances may be made from time to time, at the option of the party of the second part, so as to make this contract continuous in its nature; also, it being expressly agreed that this deed to secure debt secures any other advances made by the party of the second part to the party of the first part, and any other indebtedness owing or to be owing at any time between this date and the date of the cancellation of this deed, whether the same be covered by notes or by an open account or otherwise, irrespective of the amount, as first

31

above limited." This deed was recorded on October 17, 1917. On October 1, 1919, while this security deed was outstanding and when Hagan was largely indebted to Flynn-Harris-Bullard Company, Hagan executed and delivered to A. P. Hurst a warranty deed to the same lot of land. On January 1, 1920, Hurst went into possession, and on January 15, 1920, his deed was recorded. Flynn-Harris-Bullard Company had no actual notice of Hagan's deed to Hurst, of its record, or of Hurst's possession and claim to the land or any interest therein, at any time during the period when the advances of money were being made to Hagan. Hagan died, leaving an insolvent estate. A receiver was appointed therefor.

By intervention in the receivership proceeding Hurst set up that, in view of the statute (Civil Code of 1910, § 4316) with reference to the application of payments, all indebtedness that was due by Hagan to Flynn-Harris-Bullard Company on January 1, 1920, when Hurst entered into possession under his deed, had been satisfied and that his deed is superior to the lien claimed by Flynn-Harris-Bullard Company under its security deed for advances made subsequently to that time. Flynn-Harris-Bullard Company contended that the lien by reason of its said security deed is superior to any right or claim of Hurst. The court directed a verdict in favor of Flynn-Harris-Bullard Company, and Hurst excepted.

*J. T. Goree* and *W. L. Bryan,* for plaintiff in error.

*E. K. Wilcox, T. G. Connell,* and *Copeland & Dukes,* contra.

BECK, P. J. (After stating the foregoing facts.) Under the pleadings and the evidence in this record, the question for determination is as follows: Where a creditor holds a deed conveying certain property to secure a named sum, and providing "also, it being expressly agreed that this deed to secure debt secures any other advances made by the party of the second part to the party of the first part, and any other indebtedness owing, or to be owing at any time between this date and the date of the cancellation of this security deed, whether the same be covered by note or by an open account, or otherwise, irrespective of the amount, as first limited above," and, "it being expressly agreed that when any payment is made on said notes, or any renewal thereof, fresh advances may be made, from time to time, at the option of the party of the second part, so as to make this contract continuous in its nature," and future advances are made under the deed, is the creditor pro-

tected by his security for such future advances made without notice
that a third person had taken from the debtor a warranty deed to
the property and without notice that such third person was in pos-
session of the property, or claimed an interest in it? The question
propounded is thus stated in the brief of counsel for defendant in
error; and while counsel for plaintiff in error state the question
in a slightly different form, they agree that the determination of
this question as stated decides the case.

The briefs filed in this case are quite elaborate and illuminating,
showing that in their preparation there was diligent research and
a careful consideration of the authorities relating to the question.
Counsel for plaintiff in error points out and discusses the cases
on the subject, and considers separately the division of the cases
wherein are stated and laid down the absolute rule, the rule of
actual notice, and the rule of record notice. These three divisions
of the cases are discussed elaborately in the decisions cited in the
note to the case of Straeffer *v.* Rodman (146 Ky. 1, 141 S. W.
742), in Ann. Cas., 1913C, 549, 555. Counsel for plaintiff in
error also discusses the equities of the three rules and the incon-
veniences that would result from the enforcement of the absolute
rule, and argues cogently against the adoption of that rule in this
State, insisting that up to this time it has not been adopted; and
that it would be an adoption of the absolute rule if this court
should affirm the decision of the court below. Whether such an
affirmance adopts the absolute rule in extenso as that rule has been
defined in English courts and in American courts following the
English decisions, it is not necessary to say; because, to say ab-
solutely how far we go towards adoption of that rule would require
qualifications and elaborate discussion that is not really essential
here. But we are of the opinion that under the Georgia decisions,
and under the decisions of other States which are cited in the brief
of counsel for defendant in error, an affirmative answer is required
to the question stated above. This view of the question is not with-
out support in text-writers and in the decisions of other courts of
this country. The general rule, as laid down in 41 C. J. 525, is as
follows: "A mortgage may be legally given to secure future ad-
vances to be made to the mortgagor, and may become a prior lien
for the amount actually loaned or paid, although the advancements
are not made until after subsequent mortgages or other liens have

come into force, except as a statute may give priority to a particular lien; and this, it has been held, may be so, even though the mortgage does not disclose on its face that future advances are secured by it." And again (p. 526) : "The law requires mortgages to be recorded, and a recorded mortgage for future advances is notice to all parties subsequently dealing with the property as to the amount advanced pursuant to the mortgage, although the latter does not specify any particular sum which it is to secure." See 19 R. C. L. 429, and cit.; also note to Straeffer v. Rodman, supra, under the heading, "Advances made without Notice of Subsequent Incumbrance." This reference renders it unnecessary to give the volumes and pages of the reports of the courts of the various States. In Willis v. Sanger, 15 Tex. Civ. App. 655 (40 S. W. 229), it was held : "A mortgage to secure advances which on its face gives information enough as to the extent and purpose of the contract, so that any one interested may by ordinary diligence ascertain the extent of the encumbrance, whether the extent of contemplated advances be limited or not, and whether the mortgagee is bound to make the advances or not, will prevail over the supervening claims of purchasers or creditors as to all the advances made within the terms of such mortgage, whether made before or after the claim of such purchaser or creditor arose, or before the mortgagee had notice of them." In Witczinski v. Everman, 55 Miss. 841, it was held: "A mortgage to secure future advances, which on its face gives information as to the extent and purpose of the contract, so that a purchaser or junior creditor may, by an inspection of the records, and by ordinary diligence and common prudence, ascertain the extent of the encumbrance, will prevail over the supervening claim of such purchaser or creditor as to all advances made by the mortgagee within the terms of such mortgage, whether made before or after the claim of such purchaser or creditor arose. It is not necessary for a mortgage for future advances to specify any particular or definite sum which it is to secure. If it contains enough to show a contract that it is to stand as a security to the mortgagee for such indebtedness as may arise from future dealings between the parties, it is sufficient to put a purchaser or encumbrancer on inquiry, and if he fails to make it in the proper quarter he can not claim protection as a bona fide purchaser."

There are several Georgia cases deciding very similar questions.

See *Hester* v. *Gairdner*, 128 *Ga.* 531 (58 S. E. 165); *Bank of Cedartown* v. *Holloway-Smith Co.*, 146 *Ga.* 700 (92 S. E. 213). In *Leffler Co.* v. *Lane*, 146 *Ga.* 741 (92 S. E. 214), the question was substantially the same as that here presented upon the controlling issue. In substance, the facts in that case were as follows: Waters was engaged in business as an individual. On August 17, 1909, he made to Leffler Company a deed to secure the payment of $1500, conveying 75 acres of land, including 13 acres involved in the suit. The deed was given to secure a pre-existing indebtedness, and "any and all indebtedness" which Waters "may hereafter owe" to Leffler Company, "be it more or less than" $1500. The debt of Waters never exceeded that amount; and when Leffler Company undertook to enforce its lien the debt of Waters was only $558, with interest. The security was worth far in excess of this sum. Subsequently to the making of the deed to secure debt, Waters went into partnership with one Lee, under the name and style of P. C. Waters & Company. The partnership became indebted to Leffler Company about $6400. The partnership was dissolved, with the knowledge of Leffler Company, and Waters assumed its liabilities. Leffler Company undertook to collect not only Waters' individual debt, but also the partnership debt, all aggregating about $7000, and contended that the deed to secure debt embraced the partnership debt as well as the individual debt of Waters. In the meantime, at some point during these transactions after the making of the deed to secure debt (the exact date not appearing), Waters conveyed 13 acres of the land in question to the predecessor in title of Lane. Lane did not know nor did his predecessor in title know of the outstanding deed to secure debt held by Leffler Company. Waters did not know that Leffler Company was claiming that the deed was security for the partnership debt to that company which he had assumed. On this state of facts it was held that Leffler Company was entitled to collect the full amount of its debt out of the amount pledged as security. In the opinion Mr. Justice Gilbert said: "The terms of the deed are comprehensive and unambiguous. There are no allegations of fraud, nor of anything else entering into the making of the deed which would in any way excuse the grantor or relieve him from the terms of the contract which he engaged to perform. Courts should guard with jealous care the rights of private contract, and

give to them full effect when possible to do so. This is a duty which rests upon principles of the highest importance, for the security and integrity of the business world depends upon it. It is insisted that the intention of the parties in making the deed was to secure such advances as should be made by Leffler Company to Waters in the usual course of business as theretofore conducted by him; that Waters at that time was doing business as an individual, but subsequently thereto entered into a copartnership with one Lee; and that the firm thus constituted continued the usual business with Leffler Company; and that this firm contracted a debt which was not embraced within the terms of the security deed, although after the dissolution of the firm Waters assumed the copartnership debt individually. We can see nothing in the language of the contract to justify this reasoning. The language in the deed makes no such limitation upon its operation, but, on the contrary, declares that it is intended to secure 'any and all indebtedness' which Waters 'may hereafter owe' to Leffler Company. No word in a contract shall be treated as a redundancy if any meaning reasonable and consistent with other parts can be given to it. *Mutual Life Ins. Co.* v. *Durden*, 9 *Ga. App.* 802 (72 S. E. 295). To construe this deed as securing 'any and all' indebtedness, including a debt of Waters & Lee, a copartnership, assumed by Waters, is not only reasonable and consistent with other parts of the contract, but a contrary view would be unreasonable, because the latter view would be treating as redundant and meaningless the words 'any and all' indebtedness which Waters 'may hereafter owe' to Leffler Company." The statement of facts in the report of the *Leffler* case brings out only by inference certain material facts; but we find, upon examining the record, that a part of the indebtedness of Waters to the Leffler Company arose by reason of advances made to the firm whose indebtedness Waters assumed subsequently to the contract of sale between Waters and one of the predecessors in title of Lane for a part of the land involved, according to the allegations in the petition filed by Lane. Allegations were also made, in Lane's petition, of immediate possession under the bond for title, and of the making of improvements on that particular part of the land. And the ruling of the court in reference to taking possession of this land and the making of improvements thereon is illuminating upon the question which we have before us, and is as

follows: "The court did not err in striking from the agreed statement of facts evidence in regard to the placing of permanent improvements on the land by subsequent grantees. These grantees bought an equity entitling them only (1) to pay up the indebtedness secured by the deed and take the property, or (2) to the surplus cash, if any, after sale of the property and payment of the debts. The record of the security deed was constructive notice to subsequent grantees. Actual notice was not necessary." See also *McClure* v. *Smith,* 115 *Ga.* 709 (42 S. E. 53).

Whatever may be the doctrine in other States, we think that the rulings in the decisions by this court in the cases cited require an affirmance of the judgment of the court below.

*Judgment affirmed. All the Justices concur.*

ATKINSON, J., concurs in the judgment, but is of the opinion that the creditor who held a security deed for future advances would have been protected even if he had had actual notice or knowledge of the subsequent sale at the time he made his future advances.