ZACHRY *v.* INDUSTRIAL LOAN & INVESTMENT CO. *et al.*

No. 11077. July 2, 1936.

*Sara C. M. Torbert* and *Walker & Kilbride,* for plaintiff.

*Jones, Johnston, Russell & Sparks, Grice & Grice,* and *Arthur Lewis,* for defendants.

Russell, Chief Justice. On November 14, 1936, the Industrial Loan & Investment Company foreclosed, in the municipal court of Macon, a bill of sale executed by Alfred Mabry, which conveyed certain personal property and recited that it was given for the purpose of securing a note for $345 of even date therewith, "as well as any other indebtedness the grantor may hereafter owe to the company, in whatever capacity and however evidenced, the total of which will with the indebtedness above described not exceed the sum of $350." On the following day W. H. Zachry filed in Bibb superior court his petition against Mabry, praying for equitable foreclosure of a bill of sale executed by him to Mabry, conveying substantially the same property as that described in the Industrial Loan & Investment Company's bill of sale, and praying for appointment of a receiver. By amendment Zachry prayed that Industrial Loan & Investment Company be restrained from further proceeding with the foreclosure in the municipal court, and that it be made a defendant in the equitable proceeding. A rule nisi was issued, calling on the Industrial Loan & Investment Company to show why it should not be required to intervene in the superior court, and on a hearing the court passed the following order: "The within rule nisi coming on to be heard, and the Industrial Loan & Investment Company having answered in response to said rule and having consented to file its intervention and be made a party in the within case upon the express condition that it not be taxed with any cost in this proceeding as against its priority claim alleged in the sum of $350: it is therefore ordered

that said rule nisi be made absolute, and that Industrial Loan & Investment Company be required to file its intervention herein and be made a party plaintiff upon the express condition that whatever amount it shall be determined that it be entitled to, under and by virtue of its secured and priority claim, shall be ordered paid to it without deduction for any part of the costs of this proceeding." In response to this order the Industrial Loan & Investment Company filed its intervention praying that it be given a prior lien on the property described in its bill of sale to the amount of $350.

J. H. Porter filed an intervention setting up that Mabry and David T. Bussey had been in partnership under the name of Bussey-Mabry Manufacturing Company; that on December 1, 1933, Mabry came to intervenor and stated that the firm of Bussey-Mabry Manufacturing Company owed T. T. Blakely $1000 secured by a bill of sale to the personal property of the partnership; that if Porter would lend or secure for Mabry $1000 with which to pay Blakely, Mabry would have the note and bill of sale transferred to Porter as security; that Porter thereupon indorsed Mabry's note at a named bank, and Mabry thus procured the money and paid Blakely, but no transfer of the papers was made as Mabry promised; and that Porter was still liable as indorser on the note on which Mabry obtained $1000. He prayed that he be decreed to be the owner of said note and bill of sale, and that his claim be decreed to be a prior lien on the property described. David T. Bussey filed an intervention asserting that the partnership of Bussey-Mabry Manufacturing Company had been dissolved, but that Mabry had failed to account with Bussey for Bussey's share of the business. He prayed for an accounting of the partnership property, and that no lien be awarded to other creditors of Mabry, except subject and inferior to Bussey's claim.

By consent the case was submitted to the judge to pass on all issues of law and fact. After hearing evidence he made a finding of fact, and rendered a final decree. This decree adjudged Porter to be the owner of the Blakely note and bill of sale, and awarded to him a special lien on the property covered by this bill of sale for $1000 and interest. The Industrial Loan & Investment Company was awarded a lien on such of the property covered by its bill of sale as was not included in the Blakely instrument, to the

extent of $350. Zachry was decreed a lien on the property described in his bill of sale (except such as was included in the Blakely bill of sale), subject to the $350 lien awarded to the Industrial Loan & Investment Company. (See *Bussey* v. *Porter*, ante, 727). Zachry's motion for new trial was overruled, and he excepted. He assigned error also on the order relieving Industrial Loan & Investment Company of the payment of cost. The grounds of the motion for new trial appear hereinafter.

■ We consider first the exceptions pendente lite. It appears that on April 11, 1935, there having been presented a petition for receiver, accounting, injunction, etc., in the case of W. H. Zachry *v.* Alfred Mabry, the question arose of allowing certain interventions of various parties. The court was considering whether the Industrial Loan & Investment Company should be made a party in the suit of Zachry against Mabry. The Industrial Loan & Investment Company had a pending suit in the municipal court of Macon against Alfred Mabry, in which it was proceeding to foreclose a bill of sale given to secure a debt. On December 1, 1934, the superior court was considering primarily the question of making permanent a temporary receivership which had been granted upon the petition of Zachry, and the question as to allowance of the interventions of various parties. It does not appear from the record that the Industrial Loan & Investment Company asked to intervene in the proceeding brought by Zachry against Mabry. But it does not appear that there were not good reasons authorizing the court to enjoin the proceeding in the municipal court, and to require the Industrial Loan & Investment Company to file an intervention. At this hearing the court passed the order quoted above, expressly providing "that whatever amount it shall be determined that it be entitled to, under and by virtue of its secured and priority claim, shall be ordered paid to it without deduction for any part of the costs in this proceeding." We know of no rule of law which forbids the direction as to costs given by the judge, and none has been cited. The case is in equity, in which the powers of a judge are very extensive. It seems to us that the direction as to costs was appropriate, assuming, as we must, that the order that the Industrial Loan & Investment Company should intervene was not for the benefit especially of that company, but rather to further the prayer of Zachry for an in-

junction restraining the other creditors of Mabry, including the investment company, from proceeding to collect their demands. So far as the rights of the investment company were concerned, the municipal court had ample jurisdiction to foreclose its claim. It might in that court, which proceeds much more rapidly than the superior court, obtain a judgment which would have priority over the claim of Zachry, or of others who chose to intervene. It is apparent that the investment company had nothing to gain by intervening, and was practically forced to intervene by the court upon the general principle that when equity takes charge of the corpus of a case it will deal with all phases and all claimants interested in the litigation. But if the court had not arrested the proceeding in the municipal court, the cost in the municipal court, presumptively at least, would have been smaller than the cost in the court of equity, including the cost of the receivership asked for by Zachry. In these circumstances we think the court properly restricted the cost, so far as the Industrial Loan & Investment Company was concerned, to such cost as accrue in the municipal court. Had the Industrial Loan & Investment Company voluntarily joined by intervention in the litigation, it would be subject to the cost accruing by reason of the expenses of the receivership. As it did not do so, it should not be required to have its recovery, if any, reduced by the expenses of the receivership.

■ Ground 4 of the motion for new trial assigns as error the following finding of fact: "The court finds that the property now in the custody of the court is partnership assets of the firm of Mabry-Bussey Mfg. Co. This firm is insolvent. The only claim proven against the partnership is the $1000 note and bill of sale to secure the same, given by Bussey-Mabry Mfg. Co. to T. T. Blakely ten days after the partnership contract of July 21, 1933, to wit August 1, 1933." The assignment of error which follows this statement is incomplete, because it does not set forth, except as a matter of argument, any reason why the court's action in overruling the motion was illegal. To reach the conclusion that the court's action in overruling this ground of the motion was erroneous would require a reference to the record, whereas the movant for a new trial is required to spare this court from searching the record, and also obliged to present, in an assignment of error, a specific statement of error supported by the record. More-

over, even if the assignment of error be painstakingly considered, a reference to the record and the ruling upon this ground is controlled by the decision of this court in *Bussey* v. *Porter,* ante, 727. It is true that what was said in the case just cited, in regard to the assets in the hands of the receiver being partnership property of the firm of Bussey-Mabry Manufacturing Company, may be treated as obiter; but when applied to the facts of the instant case and to the specific assignment of error upon the subject of the partnership, we now hold it to be law governing this case, even if critical examination may develop that it was not necessary to decide that point in the *Porter* case.

Ground 5 assigns error on the finding of fact that "All the other claims are the individual debts of Alfred Mabry, and have no claim on the firm assets until firm debts are paid." In the view we take of this case, there is no merit in this ground. Under the record and the evidence, the lien Zachry sought to assert was against Alfred Mabry and the assets owned by Alfred Mabry. Zachry's bill of sale does not purport to be signed by the firm of Bussey-Mabry Manufacturing Company. If the partnership of Bussey-Mabry Manufacturing Company has not been dissolved, as contended by the movant, as his bill of sale was not executed by that firm, the most that Zachry can claim is a lien upon the interest of Alfred Mabry in the assets of Bussey-Mabry Manufacturing Company; and this, under the pleadings and the evidence, absolutely precludes a recovery against the firm of Bussey-Mabry Manufacturing Company, and the record shows that the chancellor did not deal with the property in the hands of the receiver, except as being the property of Bussey-Mabry Manufacturing Company. Thus the prayer to attach his lien to the entire interest, including that of Bussey, in the assets of the partnership of Bussey-Mabry Manufacturing Company, is not sustained by the evidence. In Zachry's petition it is alleged: (1) "that Alfred Mabry, the *defendant,* is a resident of said State and county, living at Lorane, Georgia." (2) "That on August 10th, 1934, plaintiff and *defendant* entered into a contract, . . marked 'Exhibit A,' to which reference is made as often as may be necessary." Then are set forth five respects in which the contract is alleged to have been breached. It is further alleged that "the defendant has done away with his manufactured articles, and secreted the same, though tell-

ing plaintiff that he had them on hand, but refused to state where and how much; and a check up of the manufactured articles of materials and manufactured articles at the factory of the defendant fails to disclose the raw materials and manufactured articles that should be on hand, and fails to tally with the statement made by the defendant. Plaintiff charges that the defendant is hiding out his property, and, if allowed to continue, will soon do away with the assets of the business, and will render it impossible for plaintiff to collect that which is due him." In paragraph 4 the petitioner alleges that certain advances have been made by plaintiff to defendant, and refers to exhibit B attached to the petition, for further statement of the advances he has made to the defendant. In paragraph 6 petitioner alleges that he has furnished to defendant the statements required by the contract. There is a prayer for receiver, and a statement that the amount of the defendant's indebtedness is $1741.42. The complaint set forth in ground 5 is against Alfred Mabry alone. It is plain from the record that all the property was the property of the partnership of Bussey-Mabry Manufacturing Company, and the petition was not amended, in recognition of that fact, so as to confine or restrict the claim of Zachry to the half undivided interest of Mabry in the firm. It is not necessary to discuss whether with proper amendment the interest of Mabry may have been subjected to the lien of Zachry. But in the state of the pleadings and the evidence the court could not, as a matter of fact or of law, have subjected the Bussey interest in the partnership of Bussey-Mabry Manufacturing Company to the judgment sought by Zachry.

This same ground complains that the court erred in finding that by "fraud, accident, or mistake the transfer was not made at the time Blakely got Porter's money." Movant contends that there was no evidence that Blakely got Porter's money, but there was evidence that he got money belonging to the bank in Macon by virtue of Porter's indorsement, and title thereto passed into Mabry, and at no time vested in Porter. This assignment of error is controlled by the ruling in *Bussey* v. *Porter* supra. Movant further contends that the evidence fails to show that there was any effort at the time to transfer said paper to Porter on account of his indorsement, and that the evidence does not show that any objection was raised by Porter for more than a year, and

no claim set up by Porter until after plaintiff had brought the case to court, etc. This point was not raised in *Bussey* v. *Porter*, in which no motion for new trial was made, and must be adjudicated now. As appears from the evidence, the complaint now raised was fully explained to the satisfaction of the judge, who acted as jury as well as judge. This evidence shows that, after the agreement testified to by Mabry as well as Porter, Porter was taken seriously ill and was suffering from hemorrhage, which is a dangerous complaint, at the time when the assignment should have been reduced to writing. We therefore hold that it was not improper for the judge to find that by fraud, accident, or mistake Blakely got Porter's money. The jury are necessarily often required to find facts by inferences from other facts which are uncontradicted. By consent of all parties the judge was pro hac vice also the jury. That Blakely did get Porter's money is fully proved by the circumstance that Mabry drew the money to pay the debt from the very bank where Mabry procured the money with which to pay Blakely, only by reason of the fact that Porter, who was known to be solvent, had indorsed Mabry's note. So Porter did not, as movant contends, set up said claim as an afterthought, or "set up said claim and illegally dated back a purported agreement, thus undertaking to set up said afterthought and illegal claim," if the judge reached the conclusion that the testimony of the witnesses to the foregoing circumstances was credible. Whether or not the agreement complained of might "deprive innocent third parties of funds, who had no knowledge of Porter's connection and purported ownership, by virtue of a private statement never heard of until after this court had charge of all the assets claimed to be owned by Alfred Mabry," and was such a circumstance as might tend to discredit or even impeach the testimony of the witnesses who testified to the facts just recited, would be a question for a jury, or for the judge when he passes on the evidence. We can not concur in the statement of movant that "said finding was error, because, as movant contends, the evidence did not show any express terms whereby Porter was to absolutely acquire Blakely's claim." Movant further contends that "the court erred both in law and in fact in its findings as follows: 'The Industrial Loan & Investment Co. and W. H. Zachry have established no debts or liens against the partnership assets of Bussey-Mabry Mfg. Co., but

have established their respective claims as valid debts against Alfred Mabry individually.'"

In view of what we have said, the court did not err, either in law or in fact, in any of the findings of which complaint is made. Movant also contends that the court "erred as a matter of law in concluding that the Industrial Loan & Investment Co.'s claim was superior to that of the plaintiff, W. H. Zachry, in the sum of $350." Movant asserts that the court misinterpreted the decision of this court in *Hurst* v. *Flynn-Harris-Bullard Co.*, 166 *Ga.* 480 (143 S. E. 503). So far as the principle stated in the *Hurst* case is applicable to the case at bar, there was no error in the interpretation by the judge of the ruling cited. This court held: "Where a creditor holds a deed conveying certain property to secure a named sum, and providing 'also, it being expressly agreed that this deed to secure debt secures any other advances made by the party of the second part to the party of the first part, and any other indebtedness owing, or to be owing at any time between this date and the date of the cancellation of this security deed, whether the same be covered by note or by an open account, or otherwise, irrespective of the amount, as first limited above,' and 'it being expressly agreed that when any payment is made on said notes, or any renewal thereof, fresh advances may be made, from time to time, at the option of the party of the second part, so as to make this contract continuous in its nature,' and future advances are made under the deed, the creditor is protected by his security for such future advances made without notice that a third person had taken from the debtor a warranty deed to the property and without notice that such third person was in possession of the property, or claimed an interest in it." The question now raised by movant was decided adversely to his contentions in a very well-considered and learned opinion by Mr. Presiding Justice Beck in the *Hurst* case, where it was said that "under the Georgia decisions, and under the decisions of other States, . . an affirmative answer is required to the question" (which was, where a creditor holds a deed conveying certain property to secure a named sum, and providing that the deed is also to secure any other advances made by the lender to the borrower, and after advances are made under the deed, is a creditor protected by his security for such future advances, made without notice that a

third person had taken from the debtor a warranty ·deed to the property, and without notice that the third person was in possession of the property or claiming any interest in it?). The court quoted with approval from 41 C. J. 525: "A mortgage may be legally given to secure future advances to be made to the mortgagor, and may become a prior lien for the amount actually loaned or paid, although the advancements are not made until after subsequent mortgages or other liens have come into force, except as a statute may give priority to a particular lien; and this, it has been held, may be so, even though the mortgage does not disclose on its face that future advances are secured by it." Also: "The law requires mortgages to be recorded, and a recorded mortgage for future advances is notice to all parties subsequently dealing with the property as to the amount advanced pursuant to the mortgage, although the latter does not specify any particular sum which it is to secure." The court also cited with approval Willis v. Sanger, 15 Tex. Civ. App. 655 (40 S. W. 229), in which it was held: "A mortgage to secure advances which on its face gives information enough as to the extent and purpose of the contract, so that any one interested may by ordinary diligence ascertain the extent of the encumbrance, whether the extent of contemplated advances be limited or not, and whether the mortgagee is bound to make the advances or not, will prevail over the supervening claims of purchasers or creditors as to all advances made within the terms of such mortgage, whether made before or after the claim of such purchaser or·creditor arose, or before the mortgagee had notice of them."

The decision in Witcszinski v. Everman, 55 Miss. 841, is to the same effect, and concludes by saying that if the mortgage contains enough to show a contract that is to stand as security for such indebtedness as may arise from future dealings between the mortgagor and mortgagee, it is sufficient to put an encumbrancer on inquiry; and if he fails to make it in the proper quarter, he can not claim to have taken as a bona fide purchaser. In the *Hurst* case, supra, the court discussed at length *Leffler Co.* v. *Lane,* 146 *Ga.* 741 (92 S. E. 214), where a question substantially the same as that in the instant case was presented.· In the *Hurst* case the following was quoted from the opinion of Mr. Justice Gilbert in the *Leffler* case: "The terms of the deed are comprehensive and unambiguous.

There are no allegations of fraud, nor of anything else entering into the making of the deed which would in any way excuse the grantor or relieve him from the terms of the contract which he engaged to perform. Courts should guard with jealous care the rights of private contract, and give to them full effect when possible to do so. This is a duty which rests upon principles of the highest importance, for the security and integrity of the business world depends upon it. It is insisted that the intention of the parties in making the deed was to secure such advances as should be made by Leffler Company to Waters in the usual course of business as theretofore conducted by him; that Waters at that time was doing business as an individual, but subsequently thereto entered into a copartnership with one Lee; and that the firm thus constituted continued the usual business with Leffler Company; and that this firm contracted a debt which was not embraced within the terms of the security deed, although after the dissolution of the firm Waters assumed the copartnership debt individually. We can see nothing in the language of the contract to justify this reasoning. The language in the deed makes no such limitation upon its operation, but, on the contrary, declares that it is intended to secure 'any and all indebtedness' which Waters 'may hereafter owe' to Leffler Company. No word in a contract shall be treated as a redundancy if any meaning reasonable and consistent with other parts can be given to it. *Mutual Life Ins. Co.* v. *Durden,* 9 *Ga. App.* 802 (72 S. E. 295). To construe this deed as securing 'any and all indebtedness,' including a debt of Waters & Lee, a copartnership, assumed by Waters, is not only reasonable and consistent with other parts of the contract, but a contrary view would be unreasonable, because the latter view would be treating as redundant and meaningless the words 'any and all' indebtedness which Waters 'may hereafter owe' to Leffler Company." See also *McClure* v. *Smith,* 115 *Ga.* 709 (42 S. E. 53), where it was held that the same principle controlled where the loan had been made and the borrower gave a warranty deed, and thereafter the lender made advances to the borrower (the party executing the deed to the lender), and the only writing rendering the equity of the borrower subject to the debt subsequent to that named as a consideration of the warranty deed was a statement upon the bond for title held by the borrower, which was not re-

corded. This court held that the lien of a subsequent security deed was inferior to the equitable lien of the original lender for the advances, made after the execution and record of the security deed held by a third party.

In ground 6 the movant contends "that the court erred in passing the order of July 9, 1935, which was a final decree, a copy of which was furnished to movant's counsel on July 15, 1935. Movant contends that said order of court is contrary to law, contrary to evidence, without evidence to support it, and is contrary to the principles of equity and justice." This is but a restatement of the general grounds, which are not argued in the brief of the plaintiff in error, except that at the conclusion of the main brief it is stated that "We insist that under the pleadings, the evidence and the issues made thereby, that our client was entitled to have a decree declaring that against the property named in his intervention he had a special lien prior to all intervenors except as to $138 due the Industrial Loan & Investment Company, and that he was entitled to a judgment which should operate as a general lien against both Bussey and Mabry for the full amount of his claim, and that the court below erred in overruling his motion for a new trial as amended." We deem this argument insufficient to answer what we have ruled in dealing with the fifth ground. Without going further into the assignments of error, it is enough to say that exceptions to a decree can not be the basis of a ground of a motion for a new trial. This ruling applies equally to the exceptions to the final decree which are presented in ground 7. However, had the point been properly presented by an exception to the decree, the point is controlled by the decision of this court in *Bussey* v. *Porter,* supra. Grounds 8, 9, 10, 11, and 12 are mere exceptions to different parts of the decree, and they can not be considered as presented, because of the inflexible rule that they can not be made grounds of a motion for new trial.

In ground 13 it is alleged that the court erred in permitting David T. Bussey to maintain his intervention, which, if allowed at all, should have been maintained in the name of Bussey-Mabry Manufacturing Company, a partnership composed of David T. Bussey and Alfred Mabry; that the partnership name of Bussey-Mabry Mfg. Co. was not registered as required by law, and therefore could not maintain said action; and movant alleges it was

error on the part of the court to do that which the partnership of Bussey-Mabry Mfg. Co. could not do." This ground was without merit, and was properly overruled upon the well-settled rule that rulings upon pleadings never afford grounds of a motion for new trial. The last two grounds of the motion must properly be construed as exceptions to the decree, and can not be considered when embodied in a motion for new trial. The court did not err in overruling the motion.

*Judgment affirmed.* *All the Justices concur.*