ROSE CITY FOODS INC. *v.* BANK OF THOMAS COUNTY.

No. 17241. November 14, 1950. Rehearing denied November 27, 1950.

*C. E. Hay,* for plaintiff.

*A. J. Whitehurst,* for person at interest, not party.

*Jesse J. Gainey* and *E. P. McCollum,* for defendant.

Candler, Justice. On June 30, 1949, Rose City Foods Inc. brought an equitable suit against Bank of Thomas County. Its petition, as twice amended, prayed for process; for certain injunctive relief; for the court's construction of two like bills of sale; and for general relief. The defendant answered the amended petition and later amended its answer, and by way of cross-action alleged that the plaintiff had wrongfully converted the property involved in this litigation to its own use, and prayed for a money judgment against it. Objections to the allowance of the amendment and the defendant's prayer for affirmative relief were overruled, and that judgment is properly excepted to by the plaintiff.

The amended petition, the amended answer, and the evidence of the parties, which is not materially conflicting, made and now present to this court for decision the following case: On June 29, 1948, Southern Foods Inc., a Florida corporation, with an office and place of business in Thomas County, Georgia, borrowed $3710 from Bank of Thomas County. Contemporaneously therewith, and as security for the repayment of the loan, the borrower executed and delivered to the lender a bill of sale for three described motor vehicles. Its bill of sale was duly recorded in Thomas County, Georgia, on July 1, 1948. On July 22, 1948, the bank loaned Southern Foods Inc. an additional amount of $2121.33, and contemporaneously therewith, and to secure the repayment thereof, the borrower executed and delivered to the lender a bill of sale for another described motor vehicle, and this instrument was duly recorded in Thomas County, Georgia, on

July 24, 1948. Each bill of sale, so given to the bank by Southern Foods Inc., after first reciting that it was given as security for the loan therein mentioned, or any renewal of the whole or any part thereof, contained the following additional provisions: "and [as security for] any and all other indebtedness now due by me to said bank or hereafter incurred by me, whether directly or indirectly, as principal, endorser, guarantor, or otherwise. Title to said automobile is and shall remain in Bank of Thomas County, of Thomasville, until all of said indebtedness are paid and this contract marked satisfied of record." There was a balance of $1148.33 due on the two loans when the petition in the instant case was filed and no further payments have been made.

On December 31, 1948, Southern Foods Inc. gave Rose City Foods Inc., the plaintiff in the instant case, a mortgage on the four motor vehicles which it had previously conveyed to Bank of Thomas County. The mortgage was given for the purpose of securing an existing indebtedness of $26,982.93, which the mortgagor was then due the mortgagee. It was recorded in Polk County, Florida, on May 17, 1949, and then in Thomas County, Georgia, on May 30, 1949. No payments were ever made on the mortgage. On May 19, 1949, for "one dollar and other valuable considerations," Southern Foods Inc. sold and delivered all four of the motor vehicles in question to the plaintiff, expressly subject, however, to the remaining amount it was then due on the bank's notes, namely, $1148.33, but with an oral understanding that the vendor might, at its option, if exercised within a reasonable time, redeem them, and that the redemption money would be applied as a credit on the mortgage of December 31, 1948.

On June 1, 1949, Rose City Foods Inc. notified Bank of Thomas County that it had purchased all of the property in question from Southern Foods Inc., but expressly subject to the bank's lien, and that it desired to pay the balance due. On the following day, C. A. Strickland, president of Rose City Foods Inc., went to the bank and told H. B. Gurley, its executive vice-president, that Rose City Foods Inc. was ready to pay the balance due on the notes which Southern Foods Inc. had given it, and to take a transfer of the bank's lien without recourse. Mr. Gurley declined to close the matter at that time, stating

that it would be necessary for him to confer with the bank's attorney before doing so.

On June 4, 1949, Southern Foods Inc. owed Southeastern Margarine Company $1681.28 on open account. At the same time Southeastern Margarine Company owed Bank of Thomas County $15,150. As additional security for its existing indebtedness, Southeastern Margarine Company, on June 4, 1949, transferred and assigned its account against Southern Foods Inc. to Bank of Thomas County, using these words for that purpose: "June 4, 1949. . . For value received and in consideration of $1.00, we, the Southeastern Margarine Company, do hereby sell, assign and transfer all of our rights, titles, and interests, without recourse, to the Bank of Thomas County, Thomasville, Georgia. Said transfer of said accounts to said bank being as follows: . . Southern Foods, Inc., Thomasville, Georgia, $1,681.28. It is further agreed that these accounts and any additional accounts transferred to the Bank of Thomas County will be for the sole purpose of reducing the Southeastern Margarine Company's indebtedness to said bank." The bank notified Southern Foods Inc., by registered mail on June 4, 1949, that it had purchased the account which it was due Southeastern Margarine Company, and that payment of the account should be made directly to the bank. The registered notice was receipted for by Southern Foods Inc. on June 8, 1949. No immediate credit, however, was given Southeastern Margarine Company for the amount of the transferred account, and it was orally agreed, as shown by the defendant's evidence, that credit on the transferor's indebtedness to the bank was to be given as and when collections were made on the transferred account.

On June 7, 1949, C. E. Hay, attorney for Rose City Foods Inc., went to Bank of Thomas County and tendered Mr. Gurley, its executive vice-president, a check for $1148.33 in payment of the balance due on the notes of Southern Foods Inc. and requested that the check be accepted for that purpose and that the bank's two bills of sale be canceled of record. Mr. Gurley then advised Mr. Hay that the bank had purchased the account of Southeastern Margarine Company against Southern Foods Inc., and that, while the bank was willing to accept the check in full payment of the balance on the notes it held from Southern Foods

Inc., nevertheless, it would not be willing to cancel its bills of sale until the account against Southern Foods Inc., which it had acquired by transfer from Southeastern Margarine Company, was also paid. For the reason just stated, Mr. Hay declined to pay the bank any amount; but, after the petition in the instant case was filed, the plaintiff paid the amount so tendered into the registry of the court for the use and benefit of the defendant.

The four motor vehicles covered by the bank's bills of sale were worth more than $2829.61, the total amount claimed by the bank. The plaintiff, after taking possession of the motor vehicles involved, on May 19, 1949, had disposed of two of them and was using the other two in the conduct of its business.

By direction from the court, the jury returned a verdict in favor of the defendant for the full amount of its two claims. A motion for new trial, based upon the usual general grounds and a special ground alleging that the court erred in directing a verdict for the defendant, was overruled, and the plaintiff excepted. These statements are made in the original brief for the plaintiff in error: "There is such little, if any, conflict between the plaintiff's petition and the defendant's original answer, also such little conflict between the evidence introduced by the plaintiff and that introduced by the defendant, that the case can best be understood by a statement of the material facts in almost chronological order. . . The case turns on the construction of the 'dragnet' clause of a bill of sale to secure a debt. The bill of sale was given by Southern Foods Inc., a Florida corporation, to the defendant bank to secure a loan made by the bank to that corporation. It was on a printed form prepared by the bank. . . This whole case grows out of the 'dragnet' clause set forth in page 2 of this brief. The case turns on the interpretation of that clause. . . There are several minor questions which may possibly arise for consideration, though they do not affect the final result." And, in the brief for the defendant in error, it is said: "This record presents one question for the decision of this case, and that is: did the Bank of Thomas County have the right to hold its bills of sale to secure a debt against Southern Foods Inc. to secure the amount of the account of Southern Foods Inc., transferred by the Southeastern Margarine Company to the bank? There is practically no difference in the evidence submitted by the different parties. The question is one of law."

Therefore, in the circumstances of this case, we hold:

■ The so-called "dragnet" clause in the defendant's bills of sale is comprehensive and unambiguous, and it terms are sufficiently broad, when interpreted according to the cardinal rule of construction applicable to such instruments, to include and embrace the account which the defendant bank purchased from the Southeastern Margarine Company, its customer. On a transfer of that account to the defendant bank, Southern Foods Inc. became indirectly indebted to the bank as principal. That being true, the bank, as it contends, was legally entitled to hold its security until the notes given to it by Southern Foods Inc., and the account which it acquired by transfer from Southeastern Margarine Company, were both paid in full; and this is true notwithstanding the fact that the account was purchased by the bank after it had actual knowledge of the plaintiff's purchase and possession of the property in question. *Leffler Co.* v. *Lane,* 146 *Ga.* 741 (92 S. E. 214). See also *McClure* v. *Smith,* 115 *Ga.* 709 (42 S. E. 53); *Hurst* v. *Flynn-Harris-Bullard Co.,* 166 *Ga.* 480 (143 S. E. 503). In other words, it is a well-established principle of law in this State that a grantor may convey property, real or personal, for the purpose of securing a present, past, or future indebtedness, this being a matter of private contract; and this court has previously said that courts should always guard with jealous care the rights of private contract, and give to them full effect when it is possible to do so. This is a duty which rests upon principles of the highest importance, for the security and integrity of the business world depends upon it. On its facts, the case at bar is clearly distinguishable from *Beavers* v. *LeSueur,* 188 *Ga.* 393 (3 S. E. 2d, 667), cited and relied upon by the plaintiff in error, and no ruling there made is in conflict with the one here announced.

■ Under the facts disclosed by the records, there is no merit in the contention here made that the defendant was not entitled to a money verdict against the plaintiff for the amount due it by Southern Foods Inc., both on the notes involved and the assigned account. The grantee in a bill of sale, given for the purpose of securing a present, past, or future indebtedness, has an interest in the pledged property which will support an action of trover against anyone who wrongfully converts the same to his use

(Code, § 67-1301; *Watts* v. *Wight Investment Co.*, 25 *Ga. App.* 291, 103 S. E. 184); and in a proceeding instituted for that purpose, he may elect to take a money verdict (Code, § 107-105), and in such a case where an election to take a money verdict is made, the measure of damages is either the highest proved value of the pledged property between the date of conversion and the trial, or the value of the property at the time of conversion, with interest or hire thereon; but subject, however, to the condition that under neither choice can a recovery be had for more than the amount of the debt for which the property stands as security. *Bell* v. *Ober & Sons Co.*, 96 *Ga.* 214 (23 S. E. 7); *O'Neill Manufacturing Co.* v. *Woodley*, 118 *Ga.* 114 (44 S. E. 980). In the instant case, the evidence shows without any dispute that the plaintiff converted the pledged property to its own use and that the value of the converted property is far in excess of the total amount due the defendant, to wit, $2829.61. That being true, a verdict in favor of the defendant for the full amount due it by Southern Foods Inc. was demanded, and the court, therefore, did not err, as the plaintiff contends, in directing the jury to find accordingly. Code, § 110-104; *Foster* v. *Thomas*, 193 *Ga.* 823 (20 S. E. 2d, 80). Consequently, we find no error in the judgments complained of for any reason insisted upon.

*Judgment affirmed. All the Justices concur.*