## CITIZENS FIRST NATIONAL BANK OF ALBANY *v.* JONES; *et vice versa.*

1. The court properly overruled the exceptions of the plaintiff to the ruling of the auditor upon the question of the demurrers filed by the plaintiff to the defendant's equitable defense.
2. The plaintiff's motion to dismiss and strike the defendant's exceptions of law and fact was properly overruled.
3. Where one is indebted to a bank upon notes given by him which constitute his personal indebtedness to the bank, and is also, with other parties, liable as indorser upon a note of a third party, and transfers and assigns in writing to the bank certain stock of which he is the owner, and in the assignment uses the language, "I hereby transfer and assign to the [creditor bank] all my right, title, interest, and equity in and to 307 1-2 shares of the capital stock of [a designated company] to secure whatever indebtedness I may owe said bank," the words of assignment used should not be extended by implication to make the stock transferred security for the note upon which the assignor is an indorser.
4. Even if the stock pledged as a security for the debts of the pledgor could be held to be a pledge for a note upon which he was an indorser and secondarily liable, the novation of this latter obligation, by which two of the indorsers upon that note gave their individual notes for the entire amount, released the pledge which had been· given as a security by another one of the indorsers.

Nos. 4959, 4970. JANUARY 25, 1926.

Corporations 14 C. J. p. 728, n. 20.
Novation 29 Cyc. p. 1137, n. 52.
Pleading 31 Cyc. p. 303, n. 66.
References 34 Cyc. p. 861, n. 95.

Complaint. Before Judge Custer. Dougherty superior court. April 14, 1925.

Citizens First National Bank of Albany brought suit against P. W. Jones, on a note secured by a deed to land, in which suit the plaintiff sought to recover of the defendant the sum of $9,570.48 principal, besides interest and attorney's fees, with a special lien, as provided by law, on the land conveyed as security. The defendant filed an equitable defense setting up, in substance, that the Shellman Oil Company had been indebted to the plaintiff in approximately the sum of $39,594, which indebtedness was evidenced by promissory notes (all bearing date prior to January 28, 1922) indorsed by the defendant and by J. S. Billingslea, G. C. Mays, and Edwin Sterne; that Mays, on January 28, 1922, transferred to plaintiff certain shares of corporate stock to secure any indebtedness he might owe the plaintiff, and on the same day conveyed to Dermot Shemwell Mays' equity in said stock, subject to Mays' indebtedness to the plaintiff bank and other creditors; that these notes of the Shellman Oil Company were later divided into two notes, the defendant giving his note for one half of the amount of Shellman Oil Company's debt, and Billingslea giving his note for the other half; that the plaintiff and Shemwell's assignees, on June 2, 1923, sold said stock for $37,500, and after receiving the same the plaintiff credited approximately $20,000 thereof on certain claims held by it against Mays (exclusive of his liability on the oil company's debts), and allowed Shemwell's assignees to retain for their personal use the remainder, approximately $13,500; that the plaintiff failed and refused to account to the defendant for the same, and these acts of the plaintiff were equivalent to a conversion of the securities held by it, for which it was in equity bound to account to the defendant; that by reason of these facts the defendant did not owe the bank anything, and yet the bank declined to mark settled or cancelled the security deed given by the defendant to the bank; and that the defendant had requested an accounting with the bank, etc. He prayed that the matter be referred to an auditor; and that if after a proper accounting it should be found that the defendant was not indebted to the bank, the security deed be cancelled.

The case was referred to an auditor to pass upon all questions of law and fact. He heard the case and duly filed with the court

his report, including his findings of law and of fact, and his report of the evidence taken before him, both oral and documentary, properly identified and attached to the report in lieu of a brief thereof. He found in favor of the plaintiff the full amount sued for, with a special lien, as provided by law, on the land mentioned in the security deed. The defendant filed exceptions of law and of fact to the report. The plaintiff filed exceptions of law, and also filed a motion to dismiss and strike the defendant's exceptions of fact numbered one and two and his exceptions of law numbered one and two. When the case came on for a hearing the court overruled the plaintiff's motion to dismiss and to strike the defendant's exceptions; to which ruling the plaintiff excepted.

The court held and adjudged that the first and second exceptions of fact and the first and second exceptions of law filed by the defendant should be sustained; to which judgment the plaintiff excepted. The plaintiff moved to have the issues raised by the defendant's first and second exceptions of fact tried by a jury, but the court overruled the motion; to which ruling the plaintiff excepted. The judge held that under the above-mentioned rulings, as applied to the evidence and the findings of the auditor, it should be adjudged and decreed that the plaintiff have judgment against the defendant for the principal sum of only $86 (instead of the amount sued for), and that upon the payment of this sum by the defendant the note sued on should be decreed to have been paid in full, and that the note and security deed be surrendered and cancelled; to which decree of the court the plaintiff excepted for the reasons (1) that the same is contrary to law; (2) that it is contrary to the principles of equity; (3) that is was based on the rulings of the court above mentioned, which plaintiff claims to be erroneous; (4) because the plaintiff insists that the court had no right, under the law, to dispose of the matter by a decree without having submitted to a jury the issues raised by the defendant's exceptions of fact numbered one and two; and (5) because, as plaintiff contends, under the law and under the record in the case as it stood, there should have been a judgment in favor of the plaintiff for the full amount sued for, as found by the auditor, with a special lien on the land covered by the security deed.

*R. H. Ferrell* and *Pope & Bennet,* for plaintiff.

*Pottle & Hofmayer* and *Milner & Farkas,* for defendant.

42

BECK, P. J. (After stating the foregoing facts.)

1. The plaintiff filed demurrers, both general and special, to the answer of the defendant setting up an equitable defense to the suit. These demurrers were overruled by the auditor, and the plaintiff filed exceptions to this ruling. The court below overruled the exceptions filed by the plaintiff. And correctly so, we think. In so far as the allegations of the answer were open to the special demurrers, the amendments made cured the defects; and the general demurrer going to the entire answer was properly overruled. We shall refer to this fact further on, and point out why the general demurrer should not have been sustained, and the reason there given for holding that the general demurrer was properly overruled will be made more clear after a discussion of the merits of the case.

2. The motion to dismiss and strike the defendant's exceptions of fact numbered one and two was based upon these grounds: "1. That said exceptions are as to findings of fact made by the auditor on conflicting evidence, and it is necessary that said evidence be considered in passing on each of said exceptions of fact; and the evidence with reference to each of said findings of fact, which was adduced upon the hearing before the auditor, is not set out anywhere in the defendant's exceptions or attached to said exceptions as an exhibit, or even pointed out by appropriate reference. 2. Each of said exceptions is too vague and indefinite to present any clear-cut issue of fact. 3. Each of said exceptions fails to specify clearly and distinctly the errors complained of. 4. Said exceptions inextricably commingle and intermix questions of law and questions of fact."

The first exception of fact to the auditor's report is as follows: "Defendant excepts to the auditor's finding of fact, to the effect that the plaintiff bank had credited on the note sued on one half the amounts realized from the collaterals which it held to secure the Shellman Oil Company note, upon the following grounds: (1) Said finding is contrary to law. (2) Said finding is contrary to the undisputed evidence in the case. (3) Said finding of fact is erroneous for the reason that it is based upon certain erroneous findings and conclusions of law made by the auditor, namely, the conclusions of law stated in the 7th and 8th paragraphs of the findings of law, and particularly that finding in paragraph 8 in

which the auditor concludes that only the personal indebtedness of G. C. Mays to the plaintiff bank was intended to be secured by the assignment from Mays to the bank of the shares of stock of the Georgia Cotton Company, and that such transfer of stock was not held by the bank as security for the Shellman Oil Company note which was indorsed by Mays and others. Defendant shows that under the undisputed evidence in the case, as found by the auditor in paragraph 15 of his findings of fact, the said shares of stock of G. C. Mays in the Georgia Cotton Company were assigned to the bank 'to secure whatever indebtedness I may now owe said bank.' It was further found by the auditor, as shown in paragraph 20 of his findings of fact, that at the time of the execution of said assignment G. C. Mays was indebted to the bank as indorser, jointly and severally with Billingslea, Jones, and Sterne, on obligations of the Shellman Oil Company aggregating approximately $39,594.24. Defendant excepts to said finding on the ground that the same is based upon an erroneous construction of said assignment to the plaintiff bank, in that the auditor has construed said assignment to be security only for the primary personal indebtedness of G. C. Mays to the bank, whereas in truth and in fact, under a proper construction of said assignment, the same was given and was intended to be security for all of the indebtedness which G. C. Mays owed to the bank on the date of said assignment, both his primary personal obligations and his liability as indorser on the Shellman Oil Company notes, which were already past due when said assignment was made. Said finding of the auditor is especially erroneous for the further reason that he finds, as shown by his findings of fact numbered 24 and 26, that while the personal indebtedness of G. C. Mays to the plaintiff bank on January 28, 1922, was only $9,980.91, yet in his finding of fact number 26 the auditor finds that out of the proceeds of the sale of the Mays stock $22,640.52 was paid to the plaintiff bank on Mays' indebtedness, but thereby finding that the parties recognized that certain collateral indebtedness of G. C. Mays to the bank was covered by the assignment and was actually applied by the bank to said collateral indebtedness, to wit, a note executed by one Gibson to Lockett's Farm, which was indorsed by Lockett's Farm (of which G. C. Mays was a partner), and an obligation of Lockett's Farm to the bank; the auditor finding, under the undisputed evidence,

that G. C. Mays was one of the partners of Lockett's Farm. De-'
fendant, in connection with this particular exception, does not
point out any particular portion of the record, for the reason that
under the auditor's findings of fact, as hereinbefore referred to,
the only question made by this exception is whether or not he has
correctly construed the assignment from G. C. Mays to the Citizens
First National Bank of Albany.

"Defendant further excepts to said finding of fact No. 27, upon
the ground that under the undisputed evidence in the case, as
shown by the testimony of Thomas H. Milner, appearing in the
record from pages 113 to 124 and from 184 to 198, and particularly
on pages 113, 114, and 115 of the brief of the evidence, it appeared
that there was an agreement between Mr. Milner as the authorized
agent and representative of the bank, and the defendant, by the
terms of which the proceeds arising from the sale of the Georgia
Cotton Company stock belonging to G. C. Mays were to be credited
pro rata on the two notes which had been executed to the bank
by the defendant, P. W. Jones, and J. S. Billingslea." And here
follows, duly set out in the exception, the testimony of Milner on
the subject referred to and under consideration. The pertinent
parts of his testimony are quoted, and the pages of the record upon
which it is found are given. After quoting the testimony of Mil-
ner, the exception continues: "Exceptor further excepts to said
finding of fact, because of the testimony of P. W. Jones, defend-
ant, which is undisputed in the record, and reappears in the audi-
tor's brief of evidence on pages 81 to 107 and 195 to 196, and
particularly that portion of the testimony of defendant appearing
on page 82 of the auditor's brief of evidence, as follows:" And
this is followed by the evidence of the defendant, P. W. Jones, on
the subject. The defendant then further sets forth his exception
in the following language: "Said finding of fact was further
erroneous for the reason that in the auditor's 28th finding of fact
he expressly found that the distinct agreement and understanding
between defendant Jones and Mr. Milner, representing the bank,
was that the proceeds of the sale of this stock was to be applied
as a credit on the notes given by the defendant Jones and J. S.
Billingslea, to take up the Shellman Oil Company's indebtedness."

The defendant's second exception of fact is as follows: "Defend-
ant excepts to the 29th finding of fact by the auditor, to the effect

that only the personal indebtedness of G. C. Mays to the plaintiff bank was intended to be secured by the assignment from Mays to the bank of the shares of stock of the Georgia Cotton Company, and that such transfer was not held by the bank as security for the Shellman Oil Company note, which was indorsed by Mays and others. Defendant excepts to said finding of fact upon the following grounds: (1) Because said finding is contrary to law and contrary to the undisputed evidence in the case. (2) Because said finding is based upon an erroneous construction of the assignment from G. C. Mays to the plaintiff bank, as found and referred to in the auditor's 15th finding of fact, namely, that said assignment was made 'to secure whatever indebtedness I may owe said bank.' The auditor, having found from the undisputed evidence in the case that such assignment was given, erred in finding, as a matter of fact, that said assignment was not intended to secure the indebtedness of G. C. Mays as indorser on the obligations of the Shellman Oil Company, for the reason that the assignment, being given to secure all of the indebtedness which G. C. Mays owed the bank on the date of the assignment, and it appearing from the undisputed evidence in the case that the indebtedness of G. C. Mays as indorser on the Shellman Oil Company obligation was past due at the date of the assignment, and that he was a mere accommodation surety with certain other persons, his obligation to the bank, at the date of the assignment having already matured, was a primary obligation jointly with the makers and his coindorsers and therefore constituted at that time an 'indebtedness I may now owe said bank.'

"Defendant further excepts to said finding of fact on the ground that under the auditor's finding of fact number 28 there was a distinct agreement and understanding between the defendant Jones and Mr. Thomas H. Milner, the attorney and authorized agent of the bank, as a part of the consideration for the execution of the note sued on, that the proceeds of the sale of the stock of G. C. Mays in the Georgia Cotton Company should be applied one half to the note of P. W. Jones and one half to the note of J. S. Billingslea."

In view of the nature of these exceptions of fact we do not think that the plaintiff's exceptions thereto, on the ground that they were vague, indefinite, and failed to specify the errors complained of,

are meritorious. Nor does it appear from the plaintiff's motion that there was other evidence in the record than that quoted which the defendant in his exceptions failed to set forth or to specify.

The exceptions of law filed by the defendant were as follows:

"1. Defendant objects to the auditor's 7th finding of law, to the effect that the plaintiff bank is entitled to a judgment against the defendant for the principal sum of $9,570.48, besides interest and attorney's fees, together with a special judgment against the property described in the security deed, upon the following grounds, to wit: (1) Said finding is contrary to law. (2) Said finding is contrary to the undisputed evidence in the case. (3) Said finding and conclusion is contrary to the auditor's findings of fact, and is erroneous when applied to the facts as found by the auditor in his report, as follows, to wit: In the auditor's 15th finding of fact, he found that on January 28, 1922, G. C. Mays executed to the plaintiff bank an assignment to 307 1/2 shares of the capital stock of the Georgia Cotton Company, 'to secure whatever indebtedness I may now owe said bank.' In the auditor's 25th finding of fact he found that the plaintiff bank sold said stock to J. S. Billingslea for $37,500.00. In the auditor's 26th finding of fact he found that out of the proceeds of the sale of said stock, $22,640.52, was paid to the plaintiff bank on Mays' indebtedness to it. In the auditor's 28th finding of fact he found that there was an agreement and understanding between the defendant Jones and Mr. Thos. H. Milner, the authorized attorney, agent, and representative of the plaintiff bank, that one half of the proceeds of the collateral held by the bank to secure Mays' indebtedness would be applied on the note sued on, and that, in connection with this agreement and understanding, the stock of G. C. Mays in the Georgia Cotton Company was represented as one of the collaterals referred to, and was understood by both Mr. Milner and Mr. Jones to be a part of the collateral behind the Mays indebtedness. Defendant therefore excepts to said finding of law, and avers that under the findings of fact made by the auditor, and under the undisputed evidence in the case, and under a proper legal construction of the assignment from G. C. Mays to the plaintiff bank of the stock in the Georgia Cotton Company, said finding of law is erroneous, and the auditor should have found that the note sued on should be credited with one half of the difference between $37,500.00 and $22,640.52.

"2. Defendant excepts to the 8th finding of law of the auditor on the following grounds, to wit: (1) Said finding is contrary to law. (2) Said finding is contrary to the undisputed evidence in the case. (3) Said finding of law is contrary to the facts as found by the auditor, as shown in his 15th and 28th findings of fact, and other findings on this subject; and said conclusion of law involves an erroneous conclusion of the assignment which was found by the auditor in his 15th finding of fact to have been executed by G. C. Mays on January 28, 1922, to the plaintiff bank 'to secure whatever indebtedness I may now owe said bank;' the auditor having found as a fact, as shown by the 28th finding of fact, that there was a distinct understanding and agreement between the defendant Jones and the authorized agent and representative of the bank that one half of the proceeds arising from the sale of this stock in the Georgia Cotton Company should be applied to the note sued on."

These exceptions of law are sufficient as against the objections that they do not sufficiently set out the evidence that was pertinent, that they are vague and indefinite, and that they confuse the questions of law and questions of fact.

3. The plaintiff filed numerous exceptions of law and fact to the report of the auditor, and the defendant filed two exceptions of law and two exceptions of fact. The judge struck all exceptions filed by the plaintiff, except two. The defendant in a cross-bill of exceptions assigned error upon so much of this judgment as sustained the two exceptions filed by the plaintiff. The trial court sustained the first and second exceptions of fact and the first and second exceptions of law filed by the defendant; and to this ruling the plaintiff excepted. We shall not take up in order all of these exceptions filed by the plaintiff and by the defendant, but shall decide certain of them, and the rulings made will be controlling upon the merits of the case. One of the exceptions made by the defendant is to the auditor's 27th finding of fact, to the effect that the plaintiff bank had "credited on the Jones note sued on one half the amounts realized from the collaterals which it held to secure the Shellman Oil Company note." This is excepted to upon the grounds that it is contrary to law, contrary to the undisputed evidence, and that it is erroneous for the reason that it is based upon certain erroneous findings and conclusions of law made by

the auditor, namely, the conclusion of law stated in the 7th and 8th paragraphs of the findings of law, and particularly the finding in paragraph 8 in which the auditor concludes that only the personal indebtedness of G. C. Mays to the plaintiff bank was intended to be secured by the assignment from Mays to the bank of the shares of stock of the Georgia Cotton Company, and that such transfer of stock was not held by the bank as security for the Shellman Oil Company note, which was indorsed by Mays and others. The 7th and 8th paragraphs of the findings of law, which the defendant attacks in his exceptions as the basis of the erroneous ruling complained of, are as follows: (7) "I find that the plaintiff bank is entitled to a judgment against the defendant Jones for the principal sum of $9,570.48, and interest thereon at 8 per cent. per annum, as prayed for in the petition in this case, and ten per cent. attorney's fees, and that it is entitled to a special judgment therefor against the property described in the security deed, a copy of which is attached to the plaintiff's declaration. (8) "I find that only the personal indebtedness of the said G. C. Mays to the plaintiff bank was intended to be secured by the assignment from Mays to the bank of the shares of stock of the Georgia Cotton Company, and that such transfer of said stock was not held by the bank as security for the Shellman Oil Company note which was indorsed by Mays and others."

The basic ruling of the auditor in this matter is in the last findings just quoted above. The exception of the plaintiff to the ruling sustaining the defendant's exceptions to these findings of the auditor goes to the main question in this case. The finding of the auditor was that "only the personal indebtedness of G. C. Mays to the plaintiff bank was intended to be secured by the assignment from Mays to the bank of the shares of stock of the Georgia Cotton Company, and that such transfer of stock was not held by the bank as security for the Shellman Oil Company note which was indorsed by Mays and others." Upon the exceptions made by the defendant in the case, the court below reversed this finding of the auditor, virtually holding that the transfer of stock just referred to was not only to secure the personal indebtedness of Mays, but made that stock also security for the Shellman Oil Company note. We are of the opinion that the finding of the auditor upon this vital point was correct. G. C. Mays at the time of the trans-

fer was indebted personally in a large amount to the bank, and he was indorser upon the Shellman Oil Company note. When he made the transfer of the stock he used the following language: "For the sum of one dollar and other valuable considerations I hereby transfer and assign to the Citizens First National Bank of Albany, Georgia, all my right, title, interest, and equity in and to three hundred and seven and one half (307-1/2) shares of the capital stock of said company to secure whatever indebtedness I may owe said bank." The words employed in this assignment and transfer are to be given their ordinary signification. There is no reason for giving them a signification peculiar to any branch of commerce. The word "indebtedness" may sometimes be used to embrace a liability that is merely secondary; but if one indorses a note for another, which makes his liability secondary upon the note, he rarely ranks that liability among his debts. The use of the personal pronoun "I," while not controlling, strongly indicates that the transfer was made for the personal debt of the transferor. And the word "owe" itself is not without signification. The word is in the present tense, and the expression, "whatever indebtedness I may owe the bank," is equivalent to "whatever I may now owe the bank." We may treat this transfer of Mays' stock as a grant or transfer of interest in property. And it should be strictly construed; nothing should be added to it by implication.

It appears in the record that the transfer of Mays' stock was prepared by the bank's attorney; and if there is ambiguity, it would have to be construed against the bank. The defendant in this case, who claims that the transfer was also to secure the Shellman Oil Company's note, can have no broader meaning given to the expression than the bank is entitled to; for when the transfer was made, it was to the bank, and if the bank can not claim that the transfer was to secure the Shellman Oil Company note in addition to the personal indebtedness of Mays, the defendant Jones can not claim it. But we do not think there was any ambiguity in it. Certain parol evidence was admitted, which was objected to by the plaintiff. If there was no ambiguity, then this parol evidence should not have been admitted, and the court below properly reversed the ruling of the auditor admitting this parol testimony. But with the parol testimony in as it stands, which was objected to (the testimony of Jones and of

Milner), we do not think that evidence should have the effect of broadening the meaning of the transfer. What took place between Jones and the attorney or agent of the bank could not make the transfer applicable to liabilities which were not covered by the transfer as originally made. While no decision made by this court has been called to our attention ruling the precise question here made, there are decisions from other States and from this court which throw light upon it. In Columbia Nat. Bank *v.* Commonwealth, 238 Fed. 543 (151 C. C. A. 479), it was said: "Where two joint makers of a note pledged their individual property for the payment of the note and 'all other liabilities of the undersigned' to the holder of the note, the holder can not, after the bankruptcy of the makers, apply the security to the payment of a note jointly signed by those two makers and one other, any more than it could to one signed by one of the makers alone." "The terms of a covenant in a mortgage—the agreement to pay the joint debt of two named parties, and any individual debt of either of them—will not cover a copartnership obligation of a firm composed of such parties and a third party." In re Shevill, 11 Fed. 858. And In re Evans et al., 235 Fed. 635, it was said: "Where collateral is pledged to secure a firm obligation, such collateral can not be used in paying a note signed by the members of the firm as their joint individual obligation; and in case of bankruptcy, the holder of the collateral, holding a joint obligation of the members of the firm, must deliver to the trustee in bankruptcy any surplus." In Fullerton *v.* Chatham Nat. Bank, 40 N. Y. Supp. 874 (17 Misc. 529), it was held that a pledge to secure every "indebtedness or liability" of the pledgor does not include a note of another person indorsed by the pledgor and discounted for his benefit by the pledgee. In Harris *v.* Franklin Bank, 77 Md. 423 (26 Atl. 523), it was held that the agreement of pledge is to be construed strictly, so as not to extend the obligation beyond that intended by the pledgor. And in Brown *v.* James, 80 Neb. 475 (114 N. W. 591), it was held that the contract of pledge providing that certain notes were to be held as security for a certain debt, and "any other liability or liabilities due or to become due or which may hereafter be contracted," did not secure the payment of moneys afterwards collected by the pledgor for the pledgee, as agent, and unlawfully converted.

And from the case of First Nat. Bank of Omaha *v.* Illinois Trust & Sav. Bank, 84 Fed. 34, it appears that a note executed to a bank by a borrower contained a printed recital that the maker had deposited collateral security for the payment thereof, "and also all other present or future demands of any kind of said bank" against the maker, due or not due. It further provided that the bank should have power to sell the collateral, and apply the proceeds to the payment of the note, and should "return the overplus, if any," to the maker. The maker deposited as collateral certain shares of stock in a corporation, and subsequently increased the amount from time to time in compliance with demands of the bank on the ground that the market value of the stock had declined, leaving the margin below its requirements. The court held that the agreement was one of pledge, and to secure payment of the note only, as the power to sell was limited to that purpose, and that, on tender of payment of the note, the bank was not entitled to retain the stock as security for a loan previously made from the bank by the maker for a term of years on real-estate security, and which had been assumed by a subsequent purchaser of the property. And in the case of San Antonio Nat. Bank *v.* Blocker, 77 Texas, 73 (13 S. W. 961), it was decided that a pledge of security for a firm debt did not secure a note of one partner indorsed by the other partner and others. In the case of Gillet *v.* Bank, 160 N. Y. 549 (55 N. E. 292), it was held: "Where an agreement, in a printed form of note furnished by the bank and signed by a customer on obtaining a loan for the amount of the note, by which the customer pledged certain property as collateral security for the payment of the note 'or any other liability or liabilities of the undersigned to said bank, due or to become due, or which may hereafter be contracted or existing,' is properly construed . . as referring only to liabilities of the customer to the bank in the ordinary course of its banking business, the bank is not entitled to retain the pledged property for the purpose of applying it upon a note of the customer to a third party, which, although drawn payable at the customer's bank, was not paid by it or charged to the customer's account, but was dishonored, and then purchased, by the bank." Certain of the cases cited by counsel for the defendant use broad expressions that might give the assignment a broader meaning than that which should be given. None of them

construe the exact language that we have here to construe with reference to the state of facts shown in this record; and we think the sounder rule is announced in what we have said above and in the decisions supporting it. It would be making a strong implication in favor of the bank, which took this assignment of stock pledged as security for Mays' debt, to hold that it also covered the Shellman Oil Company note, upon which Mays was merely an indorser. There would be more ground for making this implication if he were the sole indorser upon that note; but he was one of several indorsers.

It might appear from what we have said above that the general demurrer to the cross petition in the answer should have been sustained; and at first it so appeared to us. But we reach the conclusion that the general demurrer should have been overruled in view of the fact that it is alleged in one part of the answer that "the stock of the said Mays was retained to secure this note." It may be that, applying the strict rule that the pleadings should be most strictly construed against the pleader, this expression should have been held open to the special demurrer that it was vague and indefinite; but we concluded to examine the matter further upon its merits and pass upon the controlling question with which we have just dealt.

4. Moreover, in his fourth finding of fact the auditor found that "On May 8th, 1922, Jones, and at about the same time Billingslea, both of whom were indorsers on the Shellman Oil Company note held by the plaintiff bank, each gave to the plaintiff bank a new note for one half of the Shellman Oil Company indebtedness to the bank, and that it was the intention and understanding of the parties at the time that Jones should be relieved of any liability on the Shellman Oil Company note, and that Billingslea should be relieved of any liability on the Shellman Oil Company note, and that to this extent there was a novation as to the Shellman Oil Company note." This finding is not excepted to, and we are of the opinion that even if the Cotton Company stock was pledged as security both for Mays' individual debts and for the debts upon which he was liable as an indorser, this novation would have released that stock so pledged from the lien, so that the bank could no longer hold it, but could be forced to deliver it to the parties to whom the equity in the stock, after the discharge of

Mays' debt, had been sold.   Whether we should hold as an original proposition that the giving by Jones and Billingslea of their two individual notes, each for one half of the Shellman Oil Company indebtedness to the bank, would amount to a novation, we need not rule; for the auditor has made a finding, which is unexcepted to, which we have set forth above, in which he finds that Jones and Billingslea, who were indorsers on the Oil Company note, each gave to the plaintiff bank a new note for one half of the Shellman Oil Company indebtedness to the bank, and that it was the intention and understanding of the parties at the time that Jones and Billingslea should each be relieved of any liability on the Shellman Oil Company note, and that to this extent there was a novation as to this last-mentioned note.   A novation to this extent was necessarily a novation which would prevent the bank from still holding the stock pledged as security by Mays for the Shellman Oil Company note upon which he was indorser.

Under the rulings made in this and the preceding division of this opinion, Jones, the defendant, was not entitled to have the stock pledged by Mays as security applied to this note which he had given for one half of the Oil Company indebtedness.   And it follows further, that the plaintiff bank was entitled to a judgment for the amount found by the auditor in favor of the bank, that is, $9,570.48, and the court erred in finding otherwise.

And these rulings upon the merits of the case render it unnecessary to pass upon the exceptions which we have not expressly referred to, and the rulings of the .court thereon.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill.   All the Justices concur.*