48662. HAMLIN v. TIMBERLAKE GROCERY COMPANY et al.

Pannell, Judge. This is an appeal from a ruling of the trial judge holding that a security deed executed and delivered by appellant, Mrs. Artie M. Hamlin, to Timberlake Grocery Company of Macon, a corporation, conveyed the property therein described as security for a debt on account owed by A & T Kwik-N-Handi, Inc. (of which Mrs. Hamlin was sole stockholder and president) to Timberlake Grocery Company, under what is commonly termed a "dragnet" or "blanket" or "open end" provision of the security deed. The security deed was completely typed and contained among others, the following provisions, either paraphrased or quoted. The security deed recited a consideration

"of the sum of One Hundred Dollars ($100.00) and other considerations hereinafter mentioned. . . " After the habendum clause the security deed recited it was "intended to secure and indemnify the Second Party against loss by reason of its endorsement as surety upon a promissory note this day executed by A & T Kwik-N-Handi, Inc. in favor of the Upson County Bank of Thomaston, Georgia, for the principal sum of Fifteen Thousand Dollars ($15,000), payable in sixty (60) equal consecutive monthly installments, the first installment being due (30) days from this date, said note providing for interest from date payable on each principal installment payment date upon the remaining balance and for the payment of fifteen percent (15%) attorneys' fees if collected by law, together with any and all other indebtedness now owing or which may hereafter be owing by the A & T Kwik-N-Handi, Inc. to the Second Party, *however incurred,* and all renewal or renewals, extension or extensions of the aforesaid indebtedness, *or other indebtedness,* either in whole or in part." (Emphasis supplied.)

The security deed further recited: "Time is of the essence, and (1) upon the failure of the A & T Kwik-N-Handi, Inc. to pay any monthly instalment, whether the same be principal or interest, to the Upson County Bank, or its assigns, upon the due date thereof; (2) upon the failure of the A & T Kwik-N-Handi, Inc. to maintain an inventory of the cost value of at least Fifteen Thousand Dollars ($15,000); (3) or, the failure of the A & T Kwik-N-Handi, Inc. to pay and discharge any lien for taxes, whether the same be federal, state or municipal, or (4) if any creditor obtains a judgment against the A & T Kwik-N-Handi, Inc. which is not discharged within ten (10) days thereof, or (5) if the First Party fails to make any payment due to the holder of the first deed to secure debt hereinabove mentioned upon the due date thereof, or (6) upon the failure of the First Party to pay any taxes, federal, state or municipal due upon the property described herein, or (7) upon the failure of the First Party to maintain fire and extended coverage insurance on the premises hereinabove described in the amount of the full insurable value thereof with an insurance company or companies acceptable to the Second Party, or (8) if the Second Party in good faith believes that it is insecure in its suretyship then, upon the happening of any of the aforesaid events, the Second Party may declare the entire unpaid balance of the A & T Kwik-N-Handi, Inc. due and payable as well as any other indebtedness of the A & T Kwik-N-Handi, Inc. to

the Second Party and the right of action thereon shall at once exist in favor of the Second Party against the First Party."

Upon the happening of either of these events, a power of sale was granted to the Second Party (Timberlake) and it was provided: "The proceeds of such sale shall first be applied to the payment of all indebtedness due by the A & T Kwik-N-Handi, Inc. to the Upson County Bank and/or the second Party then to the expenses of such sale and the remainder, if any, shall be paid to the First Party."

At the time of the execution and delivery of the security deed, A & T Kwik-N-Handi, Inc., was indebted to Timberlake Grocery Company in the amount of $58,683.05, and at time of complaint in the amount of $91,101.39 on open account, which had never been less than $25,000.

By agreement of the parties, the property was sold and the proceeds disbursed to the payment of a first security deed, the indebtedness to the bank and the expenses of sale, taxes, etc., leaving a balance of the proceeds of the sale of $16,683.04. The present complaint brought by Timberlake Grocery Company of Macon, a corporation, was for the purpose of determining whether Mrs. Hamlin or the Timberlake Grocery Company was entitled to the balance of the proceeds of sale. *Held:*

1. "It is a well-recognized rule of construction that when a statute or document enumerates by names several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis with the things specifically named, unless, of course, there is something to show that a wider sense was intended. *Grier v. State,* 103 Ga. 428 (30 SE 255); *Standard Oil Co. v. Swanson,* 121 Ga. 412, 415 (49 SE 262); *Fleming v. Rome,* 130 Ga. 383, 386 (61 SE 5)." *Beavers v. LeSueur,* 188 Ga. 393, 403 (3 SE2d 667).

2. In the present case, as distinguished from the above cited case, which held that a simple dragnet clause as to all other debts now or hereafter owing by the grantor to the grantee did not include an unliquidated tort claim (and other similar cases such as *Citizens First National Bank of Albany v. Jones,* 161 Ga. 655 (3) (131 SE 529)), the clause here, in addition to covering debts now or hereafter owing has the additional words "however incurred," which eliminates the application of the ejusdem generis rule of construction by showing a clear intent of the parties that the debts of the A & T Kwik-N-Handi, Inc., additionally secured by

the instrument, are not relegated to those of the same kind as the primary or first mentioned debt, that is, debts on which the grantee was liable as endorsor, surety or guarantor; but are those "however incurred," and would include debts on account owed to, or incurred directly with the grantee, Timberlake Grocery Company by A & T Kwik-N-Handi, Inc. (See, *Decatur Lumber & Supply Co. v. Baker,* 210 Ga. 184, 78 SE2d 417). Nor is the clause too vague and indefinite to do so on the grounds that the debt or debts of A & T Kwik-N-Handi, Inc. additionally secured are not particularly described as to the amount or nature thereof. See, *Dudley v. Reconstruction Finance Corp.,* 188 Ga. 91 (2 SE2d 907) disapproving *Skinner v. Elliott,* 17 Ga. App. 511 (87 SE2d 59). Compare *Jacobs v. Reisman,* 99 Ga. App. 456 (108 SE2d 754) decided on a demurrer; s. c. *Reisman v. Jacobs,* 107 Ga. App. 200 (129 SE2d 338) decided on summary judgment.

3. The case of *Lanier v. Council,* 179 Ga. 568 (176 SE 614) is not controlling in the present case. That case involved a security deed from C. M. Council to Frank Lanier and Americus Grocery Company to secure a guaranty by Council of certain obligations of Planters Bank of Americus. C. M. Council and L. G. Council executed an instrument in order to better secure Frank Lanier individually and the Americus Grocery Company, a corporation by obligating themselves to pay to pay to both or either "any and all claims for which either of them may become responsible because of the endorsement of any note, check, draft, bill of exchange, or other obligation of any kind whatsoever signed by or assumed or guaranteed for the Planters Bank of Americus." The Councils then obligated themselves personally to "assume the payment of and agree to pay to the said Frank Lanier and the Americus Grocery Company, or either of them, any and all claims which may arise in any manner whatsoever, up to the sum of $50,000, by virtue of the payment of, or the assumption of the payment of, or the guarantee of any such papers by both or either of said parties for the Planters Bank of Americus." The instrument then this day executed to said Frank Lanier a *security deed for the purpose of securing this agreement,* which deed is signed by each of us to the respective homes in which we live." (Emphasis supplied.) The printed form of security deed conveying the Council homeplace, after the description of the property had typed therein the following: "This deed is given to secure any and all indebtedness of the Planters Bank of Americus to Frank Lanier or the Americus Grocery Company,

as per agreement of this date." A subsequent printed portion of the security deed recited "This conveyance is also made with the understanding that it shall operate as security for any and all renewals of the indebtedness herein described, and shall also operate as security for any and all other indebtedness which the grantor may owe, or may hereafter owe, to the grantee, before the surrender and cancellation of this deed by the grantee, or its or their assigns, successors, or assigns." The Supreme Court, on appeal by Lanier to an adverse ruling, held: "In our opinion the court properly construed the guarantees and the security deed, which plainly give evidence that neither of the guarantees, nor the security deed was intended to guarantee or secure any sums except such as might expose Frank Lanier or the Americus Grocery Company to liability in behalf of the Planters Bank ..." and that the security deed was not security for the debts of C. M. Council to the grantee or for the debts of Planters Bank of Americus owed to Lanier and Americus Grocery Company not covered by the guaranty, saying: "As we have stated, there can be nothing included in this guaranty except the payment of such amounts as Frank Lanier and the Americus Grocery Company may pay for the Planters Bank of Americus." The Supreme Court gave no specific reasons for its holding; however, we think it reasonable to assume it did so because of the recitation in the Councils' guaranty to Lanier and Americus Grocery Company, underscored above, and the typed-in recitation in the security deed controlling over the printed portion thereof, showing there was no intent to secure any other debts. Code § 20-704 (7). *Shackelford v. Fitzgerald,* 151 Ga. 35 (105 SE 597).

Be that as it may, however, the intent of the parties here construing the security deed as a whole shows a clear intent to secure Timberlake Grocery Company not only for the primary debt of endorsement on the note to the Bank of the A & T Kwik-N-Handi, Inc., but other debts of A & T Kwik-N-Handi, Inc. to the grantee as well.

4. The provisions of the Act of 1958 (Ga. L. 1958, p. 655; Code Ann. § 67-1316) have no application to the present case. That Act applies only to cases where the security instrument's "open end" clause refers to debts owing by the "mortgagor or grantor," and, if that requirement is met, is limited in its application to debts between the original parties to the instrument and of a contractual nature. The A & T Kwik-N-Handi, Inc. was not a mortgagor or grantor in the security deed involved in the

present controversy.

5. In view of the above rulings, we hold that the trial court did not err in ordering the remaining proceeds of the sale of the property conveyed by the security deed to be paid over to the appellee, Timberlake Grocery Company of Macon.

*Judgment affirmed. Eberhardt, P. J., and Stolz, J., concur.*

ARGUED OCTOBER 5, 1973 — DECIDED JANUARY 9, 1974 —
REHEARING DENIED JANUARY 25, 1974 — 

*Mullis, Reynolds & Marshall, George E. Saliba,* for appellant.
*Martin, Snow, Grant & Napier, Cubbedge Snow,* for appellees.