**Jan T. BARKSDALE**

v.

**PEOPLES FINANCIAL CORP. OF ALPHARETTA.**

Civ. A. No. C-74-971-A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 21, 1975.

J. Stephen Clifford, Atlanta, Ga., for plaintiff.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant.

## ORDER

HENDERSON, District Judge.

This is a civil action for statutory damages and attorney's fees for alleged violations of the Truth in Lending Act (hereinafter referred to as the "Act"), 15 U.S.C. § 1601 et seq. and the regulations promulgated pursuant thereto, 12 C.F.R. § 226.1 et seq., commonly known as Regulation "Z". Jurisdiction arises under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337. Pursuant to Rule 250 of the Local Rules of the United States District Court for the Northern District of Georgia, the case was referred to a special master who recommended that the defendant's motion for summary judgment be denied, the plaintiff's motion for summary judgment be granted and that judgment be entered accordingly awarding the plaintiff statutory damages in the amount of $144.00 plus court costs and reasonable attorney's fees. Presently pending are the defendant's objections to those recommendations.

The plaintiff has engaged in three consumer credit transactions with the defendant, respectively dated May 17, 1973, July 16, 1973 and December 20, 1973. The present civil action directly concerns only the December 20, 1973 transaction in which the defendant extended consumer credit to the plaintiff under the Georgia Industrial Loan Act, Ga.Code Ann. § 25–301 et seq. The plaintiff contends that the disclosure statement representing that loan agreement failed to satisfy the requirements of the Act and Regulation "Z" in the following respects: (1) the right of acceleration is not disclosed on the face of the statement as a "charge" in the event of default, (2) the due date disclosures and those relating to the consequences of default were not in close enough proximity to present a "meaningful se-

quence" of disclosure, and (3) the security interests of the defendant were not properly disclosed. The special master's recommendations concur with all three of the plaintiff's contentions.

## I. RIGHT OF ACCELERATION UPON DEFAULT

The disclosure statement furnished the plaintiff upon consummation of the loan provided, *inter alia,* that in the event an installment is not paid within five days of its due date the plaintiff-borrower will pay a "default charge" of 5% of each such installment. However, included in the terms and conditions set forth on the reverse side of the disclosure statement is the additional provision that, upon default, "then all of said note and all installments of principal and earned finance charge then unpaid . . . shall, at the option of the holder hereof, become immediately due and payable . . . ." Nowhere on the face of the statement is this right of acceleration disclosed.

The special master concluded that, as a matter of law, a right of acceleration is itself a "charge" that must be revealed on the face of the disclosure statement under Section 129(a)(7) of the Act, 15 U.S.C. § 1639(a)(7),[1] and the corresponding section of Regulation "Z", 12 C.F.R. § 226.8(b)(4).[2] However, in the interim since the time the special master's recommendations were filed, a contrary conclusion was reached in a case from this district. See McDaniel v. Fulton National Bank of Atlanta, Civil Action No. C–74–244–A (N. D.Ga. Dec. 18, 1974) (Hill, J.); see also Grant v. Imperial Motors, Civil Action No. 3146 (S.D.Ga. Nov. 20, 1974). In *McDaniel,* the court observed that, upon

exercise by the creditor of the right of acceleration, the debtor can be charged, under Georgia law, only with the principal amount of the loan and the actual earned portion of the finance charge and of the credit life and disability insurance premiums. No additional amount is to be paid by the debtor should the creditor elect to accelerate under such a provision. Therefore:

> [A]n acceleration of the loan by the creditor here would not obligate plaintiff [debtor] to pay any additional charge that did not appear on the face of the disclosure sheet.

McDaniel v. Fulton National Bank of Atlanta, *supra,* at 4. Under the facts of that case, the court concluded that the right of acceleration upon default was not a "charge" under 15 U.S.C. § 1639(a)(7) or 12 C.F.R. § 226.8(b)(4) and, consequently, there was no violation of the Act in the failure to disclose that right on the face of the statement.

■ Because this court is persuaded by the well reasoned opinion in *McDaniel, supra,* and since the present action is virtually indistinguishable from that case on material factual or legal grounds,[3] the special master's recommendation on this particular issue must be overruled. The authorities relied upon by the special master in support of his conclusion were specifically considered and adequately distinguished in the *McDaniel* case. Furthermore, although the special master finds support by analogy to certain Opinion Letters of the Federal Reserve Board Staff, those letters deal only with whether a right to charge attorney's fees upon default must be disclosed and do not confront the acceleration question at all. Accordingly, the court likewise concludes that, as a

---

1. Requiring disclosure of "[t]he default, delinquency, or similar charges payable in the event of late payments."

2. More specifically requiring disclosure of "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments."

3. Indeed, notwithstanding the Georgia law as to what portion of the face value of an installment note may be accelerated for default, the option in this case is expressly limited to the "principal and earned finance charge then unpaid. . . ." See Garrett v. G.A.C. Finance Corp., 129 Ga.App. 96, 198 S.E.2d 717 (1973); F.R.B. Opinion Letter 851 (Oct. 22, 1974).

matter of law, there is no violation of 15 U.S.C. § 1639(a)(7) or 12 C.F.R. § 226.-8(b)(4) in the fact that the defendant's contractual acceleration remedy in the event of default was not set forth on the front of the disclosure statement.

## II. DISCLOSURES IN A MEANINGFUL SEQUENCE

■ The plaintiff argues, and the special master agrees, that the defendant violated the "meaningful sequence" requirement of Regulation "Z" 12 C.F.R. § 226.6(a) [4] in failing to make disclosures relating to the consequences of default in close proximity to those setting forth the amount and due dates of the monthly installment payments. The court again disagrees with the conclusion of the special master.

■ Regulation "Z" 12 C.F.R. §§ 226.6(a) and 226.8(a) conjoin to require that the necessary disclosures in a consumer loan transaction must be made together and in a "meaningful sequence" on one side of a disclosure statement so as to provide the "meaningful disclosure of credit terms" referred to in the Act's declaration of purpose, 15 U.S.C. § 1601. In the recent Federal Reserve Board Opinion Letter No. 780 of April 10, 1974, the chief of the Truth-in-Lending Section, Jerauld C. Kluckman, offered some clarification on the import of the phrase "meaningful sequence." Responding to a question as to the propriety of the disclosure of the method of computing rebate on prepayment sequentially before all other required disclosures, Mr. Kluckman stated:

> We see no reason why a creditor making the disclosures required under § 226.8(b)(7) [¶ 3566] of Regulation Z ahead of other required disclosures would be considered in violation of § 226.6(a) as long as all disclosures required are made together and in accordance with other applicable provisions of the Regulation.

The words "in meaningful sequence" in § 226.6(a) relate to a presentation of required disclosures in a logical order with respect to those items which have an arithmetical relationship to each other. For example, many of the items called for in § 226.8(b), (c) [¶ 3567] and (d) [¶ 3568] are arithmetical and follow each other in logical progression. The remaining items are informative and have no particular interdependence. A meaningful sequence would call for those items which are arithmetically related to appear within a reasonable proximity to each other, not mixed with items which are irrelevant to a progression of arithmetical computations or thought. We realize that it is not always practical to list the items in vertical order, but in keeping with the purpose of the Truth in Lending Act, they should be placed in reasonable proximity to each other so that the customer will not be required to search for any arithmetical items which should logically follow a previous one.

CCH Consumer Credit Guide, ¶ 31,102 at 66,490. The interpretation the Federal Reserve Board gives Regulation "Z" in the form of such an opinion letter "is especially entitled to great deference 'because of the important interpretive and enforcement powers granted this agency by Congress' in this highly technical field" (citations omitted). Philbeck v. Timmers Chevrolet, Inc., 499 F.2d 971, 977 (5th Cir. 1974).

The top portion of the form given the plaintiff is devoted entirely to personal information about the borrower and data concerning the particular loan, none of which involve disclosures required under the Act and Regulation "Z". The remaining four/fifths of the statement is captioned the "Georgia Industrial Loan Act Note and Security Agreement" and is designed to serve as a note, security agreement and disclosure statement

---

4. In relevant part: "The disclosures required to be given by this part [i.e. all of Regula-tion "Z"] shall be made clearly, conspicuously, [and] in a meaningful sequence . . . .."

satisfying the requirements of both federal and state law. In the first paragraph of that disclosure form, the total amount of payments is set forth along with the stipulation that the debtor promises to pay that sum to the defendant "in 18 consecutive monthly installments of $20.00 each, commencing on 2–5, 1974, and on the same day of each succeeding month. . . ." See Regulation "Z" 12 C.F.R. § 226.8(b)(3). Next in the sequence is a blocked off section itemizing the various arithmetically related components of principal, insurance premiums, finance and interest charges and other fees and charges comprising the total amount of the note, along with the annual percentage rate of the finance charge. This is immediately followed by a disclosure of the manner and amounts of disbursements of the loan.

The first full paragraph after the blocked off section relates to the description of the property securing the indebtedness and the terms of such security interest. See Regulation "Z" 12 C.F.R. § 226.8(b)(5). In the second paragraph, the defendant discloses the rights and obligations of the parties relating to other than normal repayment of the loan. The first two sentences pertain to the right and effect of prepayment by the debtor, see Regulation "Z" 12 C.F.R. § 226.8(b)(6) and (7); and the last sentence of that paragraph provides for a "default charge" in the amount of 5% of the amount of an installment in the event that any such installment is more than five days overdue. See Regulation "Z" 12 C.F.R. § 226.8(b)(4). The next paragraph describes other rights and liabilities in the event of nonpayment and default. The remaining portion of the form concerns disclosure of insurance information pertinent to the loan.

█ In light of the views expressed in FRB opinion letter, the court cannot conclude that the relative placement of

the due date disclosures required by 12 C.F.R. § 226.8(b)(3) and the default charges necessitated by 12 C.F.R. § 226.8(b)(4) violates Regulation "Z" 12 C.F.R. § 226.6(a).[5] In the informed opinion of that expert agency, the "meaningful sequence" directive of 12 C.F.R. § 226.6(a) is addressed to those items of information required by 12 C.F.R. § 226.8(b) which have an *arithmetic* relationship and interdependence requiring presentation in a logical progression of *arithmetic* computations or thought. The blocked off section of this disclosure statement clearly appears to satisfy that "meaningful sequence" requirement by presenting in logical sequence the arithmetic components of the amount of the note face value and linking the total payment amount and payment method with the disbursement disclosures. However, the disclosures relating to the effect of payment other than according to the installment schedule, including the "default charge" clause, concern items which are "informative" in nature with no particular arithmetic interdependence.

The special master views the logical relationship between the repayment schedule and the default charge provision as requiring the proximate disclosure of these matters. The fallacy of this approach lies in the fact that virtually everything on the face of the disclosure statement is related in an informational sense with the central aspect of the loan, namely repayment. In fact, the three full paragraphs after the boxed off section contain other required disclosures of a non-arithmetical nature which set forth information as to the consequences of early or late payment and, therefore, are equally relatable to the installment due dates. Regulation "Z" cannot be read as requiring that these disclosures, bearing no direct *numerical* relationship to other disclosures, must appear in one particular order or

---

5. It is interesting to note that the statement in question presents these two disclosures in essentially the same spatial relationship as the Model Form for a "Statement for Installment Loan" set forth in the CCH Consumer Credit Guide, ¶ 3855 at 3660.

sequence *viz-a-viz* the payment schedule. As the Federal Reserve staff has previously acknowledged:

It would seem that there are a multitude of ways by which the creditor could meet these requirements of the Regulation ["Z" 12 C.F.R. § 226.-6(a)].

Federal Reserve Board Letter Number 545, Nov. 4, 1971.

The authorities relied upon by the special master, Garza v. Chicago Health Clubs, Inc., CCH Consumer Credit Guide, ¶ 99,136 (N.D.Ill., Sept. 15, 1972) and the special master recommendation in Pollack v. Avco Financial Services, Inc., Civil Action No. C–74–248–A (N. D.Ga.), are neither binding nor persuasive on this particular issue. The *Garza* decision antedated the FRB opinion letter No. 780 and the excerpt of that opinion quoted by the special master actually pertained to construction of state, not federal, law. The discussion of that court relating to Regulation "Z" 12 C.F. R. § 226.6(a) concerned disclosures of a different nature and the reasoning expressed is cursory at best. The special master's recommendation in *Pollack* has never been "reviewed, approved or adopted as the order of the Court," McDaniel v. Fulton National Bank of Atlanta, *supra*, at 3, and, furthermore, it relied substantially upon the *Garza* decision.

Therefore, the sequence of disclosure of this nonarithmetical information relating to consequences of default satisfies Regulation "Z" 12 C.F.R. §§ 226.-6(a) and 226.8(a) and provides a meaningful disclosure of those credit terms in fulfillment of the purpose of the Act. See generally 15 U.S.C. § 1631; Philbeck v. Timmers Chevrolet, Inc., *supra*; Thomas v. Myers-Dickson Furniture Company, 479 F.2d 740 (5th Cir. 1973).

### III. DISCLOSURE OF SECURITY INTERESTS

The statement representing the December 20, 1973 transaction included on its front side a section providing for the creation of a security interest in the defendant in "the property described below." However, in the portion of the form devoted to listing such secured property, the only entry is the handwritten notation "signature". The plaintiff contends that the defendant was required to, but did not, disclose that it held a security interest in certain personal property of the plaintiff against the indebtedness arising under that loan by virtue of security agreements entered into in the two prior consumer credit transactions between the plaintiff and the defendant. Specifically, he refers to the security agreement provision in the Georgia Motor Vehicle Conditional Sales Contract forms used in both the May 17, 1973 and the July 16, 1973 loans which states that:

Security Interest: Until all such installments and all other amounts due hereunder, including any renewal or extension of the indebtedness evidenced hereby in whole or in part and any and all other indebtedness of Purchaser to the holder hereof, shall have been paid in full, Seller and Seller's assignee shall retain title to and have a purchase money security interest in the property described above and in all proceeds with respect thereto to secure the payment of the Total of Payments and all other amounts due or to become due hereunder, as well as a security interest hereby conveyed by Purchaser in the following property, and all proceeds with respect thereto.

By the May 17, 1973 instrument, the defendant financed the plaintiff's purchase of a used 1966 Cadillac automobile, which was listed on the form as the property purchased, and retained a purchase money security interest in the vehicle pursuant to that security agreement. In that loan contract, the defendant also retained an additional security interest in a "1973 Curtis-Mathes TV Color 471545" which was listed immediately after the security agreement clause.

On July 16, 1973, a second Georgia Motor Vehicle Conditional Sales Contract between the same parties was executed for the apparent sole purpose of altering certain terms and conditions of the first purchase money loan. No new credit was extended, and the same automobile was again identified as the purchased property subject to the security interest of the defendant under the terms of the security agreement. The television was not designated as additional secured property on this second loan contract form.

The plaintiff argues that the loan subsequently made on December 20, 1973 falls within the scope of the phrase "any and all other indebtedness of Purchaser [plaintiff] to the holder [defendant]" as it is employed in the security agreement in the two previous loan transactions. Under the terms of those two agreements, the defendant retained a security interest in the automobile and the television until the original and all "other" indebtedness of the plaintiff to the defendant is satisfied. Thus, the plaintiff urges that the consumer loan now in issue was actually secured by that personal property enumerated in the earlier purchase money loans, notwithstanding the fact that the disclosure statement of December 20, 1973 shows only the word "signature" in the block indicating secured property. The failure to disclose such carry-over security interests in this truth-in-lending statement is claimed by the plaintiff to be a violation of the Act, Section 129(a)(8), 15 U.S.C. § 1639(a) (8).

Regulation "Z" 12 C.F.R. § 226.-8(b)(5), in relevant part, requires:

A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates . . . .

The term "security interest" as used in Regulation "Z" is "any interest in property which secures payment or performance of an obligation." 12 C.F.R. § 226.2(z). Adopting the plaintiff's line of reasoning and applying it to these regulations, the special master summarily concluded that "the instant loan transaction is 'other indebtedness' within the meaning of the security agreement in the earlier transactions" and therefore subject to the security interests arising thereunder. He recommends finding the defendant in violation of these provisions of Regulation "Z" and the Act.

■ However, in light of the present state of the record, this conclusion is premature, since the relevant language of the prior security agreement is ambiguous and not amenable to such a summary construction. The essential question, of course, is whether the defendant did, in fact, retain a security interest in the previously pledged property which carried over to subsequent extensions of credit, including the loan of December 20, 1973. The effect to be accorded the earlier agreements is necessarily a question of state law. *Cf.* Hulsart v. Hooper, 274 F.2d 403 (5th Cir. 1960). Since such a carry-over security interest would arise under the terms of the prior agreements and not the December 20, 1973 transaction, which does not itself create a new security interest in any of the plaintiff's property, the special master's citation of Conyers v. Dixie Furniture Co., Inc., Civil Action No. 15779 (N.D.Ga. March 28, 1973) and Slatter v. Aetna Finance Company, 377 F.Supp. 806 (N.D.Ga.1974) is inapposite. Furthermore, since the two previous loans were apparently not extended in accordance with the terms of the Georgia Industrial Loan Act, the defendant's citation of Rule 120–1–14–.13, Rules of Comptroller General Industrial Loan Department, is also unavailing. See Rule 120–1–14–.04(a) and (c).

Obviously, where there is no provision for coverage of future advances or loans in the original security agreement, then subsequent extensions of credit are not bound by the previously pledged collateral. See Loe v. Brown, 155 Ga. 24, 116 S.E. 309 (1923); Fleming v. Georgia Railroad Bank, 120 Ga. 1023, 48 S.E. 420 (1904); Kight v. Robinson, 10 Ga.App. 548, 73 S.E. 863 (1911). On the other hand, however, Georgia courts have long recognized and enforced "future advance" schemes in deeds to secure debt and other security instruments to effectuate a cross collateralization of previously granted security interests to indebtedness thereafter arising. Vaughn v. Kincade, 227 Ga. 553, 181 S.E.2d 843 (1971); Rose City Foods Inc. v. Bank of Thomas County, 207 Ga. 477, 62 S.E.2d 145 (1950); Hamlin v. Timberlake Grocery Company, 130 Ga.App. 648, 204 S.E.2d 442 (1974). Consistent with and perhaps even extending the pre-existing law, Section 9–204(5) of the Uniform Commercial Code, Ga.Code Ann. § 109A–9–204(5), fully endorses the use of such a device in retaining security interests in personal property and appears to require only that "the obligation [of future advances] be covered by the security agreement." Official Comment 8 to Section 9–204(5), *supra*. See Gilmore, Secured Interests in Personal Property, Vol. II, § 35.5 (1965). Furthermore, while future advance clauses evolved almost exclusively in the context of conventional secured loans, there is no legal impediment to their use in a situation arising out of a conditional sales contract, such as here. *Id.*; *e. g.*, In re Eshleman, 10 U.C.C.Rep. 750 (E.D.Pa. [Bankruptcy] April 3, 1972); In re White Plumbing & Heating Co., Inc., 6 U.C.C. 467 (E.D.Tenn. [Bankruptcy] April 9, 1969).

In its stereotype, boilerplate form, a clause setting up such an open ended security interest expressly provides, in one form or another, that it shall extend to other indebtedness arising in the future.[6] *E. g.*, Hill v. Perkins, 218 Ga. 354, 127 S.E.2d 909 (1962); Milikin v. Murphy, 214 Ga. 130, 103 S.E.2d 549 (1958); Morgan v. Todd, 214 Ga. 497, 107 S.E.2d 37 (1958); Dudley v. Reconstruction Finance Corp., 188 Ga. 91, 2 S.E.2d 907 (1939); Norwood Realty Company v. First Federal Savings & Loan Assoc., 99 Ga.App. 692, 109 S.E.2d 844 (1959); Vidalia Production Credit Assoc. v. Durrence, 94 Ga.App. 368, 94 S.E.2d 609 (1956). With such express language, the intent of the parties is clear on the face of the deed or security agreement and will be given full effect under Georgia law to bind subsequently arising debts.[7] See Rose City Foods, Inc. v. Bank of Thomas County, *supra*; Norwood Realty Company v. First Federal Savings & Loan Assoc., *supra*. Additionally, it seems that the intent of the parties at the time of such later advances or loans has no bearing upon whether they are subject to the security interest arising under a previous agreement. *Cf.* Citizens & Southern National

---

6. For example, in the security agreement provision set forth in the December 20, 1973 form it is provided that the described property [none in this case] shall be security for "any and all other indebtedness of [the borrower] to [the lender], whether now existing or hereafter arising and howsoever evidenced. . . ."

7. Beavers v. LeSueur, 188 Ga. 393, 3 S.E.2d 667 (1939) and Jacobs v. Reisman, 99 Ga. App. 456, 108 S.E.2d 754 (1959), cited by the defendant, deal with attempts to tack a subsequently arising *unliquidated* and *uncertain* claim onto a prior security interest with a future advances clause and, therefore, are readily distinguishable from the instant case concerning debts arising under contractual obligations of a similar nature between essentially the same parties. Aside from the case of "unliquidated claims," the Georgia courts apparently do not inquire into the "similarity" or "relatedness" of the primary and subsequent debts. See Gilmore, supra, §§ 35.2, 35.5, compare National Bank of Eastern Arkansas v. General Mills, Inc., 283 F. 2d 574 (8th Cir. 1960).

◼◼◼◼◼◼◼

Bank v. Gilbert, 130 Ga.App. 219, 202 S.E.2d 718 (1973).

◼ The security agreements of the May 17 and June 16, 1973 transactions provide only that the collateral then furnished shall also apply to "any and all other indebtedness" without reference to the time at which such indebtedness may accrue. Therefore, it is not patent on the face of those instruments whether the interests so created were to bind loans and advances made *in the future*. Where the language of such a clause is ambiguous, it becomes necessary to inquire into the attendant circumstances and intent of the parties in order to determine its legal effect. See Ga.Code Ann. § 20–704(1); Dudley v. Reconstruction Finance Corp., *supra*; 59 C.J.S. "Mortgages" § 177; *cf.* Decatur Lumber & Supply Co. v. Baker, 210 Ga. 184, 78 S.E.2d 417 (1953); In re Public Leasing Corp., 488 F.2d 1369 (10th Cir. 1973); but see Jacobs v. City National Bank of Fort Smith, 229 Ark. 79, 313 S.W.2d 789 (1958) (holding an identical clause insufficient to include future advances as a matter of law). Resolution of this ambiguity is critical to the case and should not be summarily disposed of by the language alone without affording the parties an opportunity to specifically address the issue of the prospective effect of the prior security agreements.

In summary, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted with respect to the alleged violations of the act and Regulation "Z" relating to the disclosure of the right of acceleration and the "meaningful sequence" of the disclosure of default information. The case is again referred to the special master for further proceedings, consistent with the provisions of this order, to determine whether the defendant actually retained a security interest by the December 20, 1973 loan which should have been expressly stated on the disclosure statement.